UNITED STATES of America,
Plaintiff-Appellee,

v.

Dewey T. NABORS, Jr.,
Defendant-Appellant.

No. 82–8398.

United States Court of Appeals,
Eleventh Circuit.

June 23, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 15, 1983.

Bobby Lee Cook, Summerville, Ga., Charles T. Erion, Macon, Ga., for defendant-appellant.

William P. Adams, Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Dewey T. Nabors, Jr. was convicted of conspiracy, possession and importation of marijuana and methaqualone. 21 U.S.C.A. §§ 841(a)(1), 846, 952(a), 963; 18 U.S.C.A. § 2. On appeal, he asserts four errors by the district court: (1) admission of laboratory analyses of the contraband which had been destroyed before Nabors had an opportunity to examine it, (2) admission of evidence that Nabors, as a named insured of the airplane involved in the drug smuggling, failed to file an insurance claim on the airplane or otherwise cooperate with the insurance company, even though the aircraft sustained extreme damage in the drug operation, (3) admission of evidence showing Nabors' involvement in similar illegal activity four years earlier, and (4) denial of Nabors' motion to compel the government to affirm or deny the monitoring of international phone conversations in which Nabors discussed drug smuggling. We affirm.

A brief account of the factual background to this case is helpful before going into more detail on the facts and arguments specific to each issue. On April 13, 1980 Michael Warner landed an airplane, leased by Nabors, in middle Georgia near the town of Unadilla. Warner, flying alone, chose

the particular landing site, a crop-dusting strip, because bad weather prevented him from landing at his intended destination. Warner immediately set the plane on fire, inadvertently causing local law enforcement officers to arrive at the scene. The officers were able to save some of the airplane's contents, which they suspected to be marijuana and methaqualone. They arrested Warner, who was convicted in state court of drug charges.

Warner was the key government witness at Nabors' subsequent trial in federal court. He testified that Nabors had hired him to fly to Colombia, pick up marijuana and methaqualone from Nabors, and bring it back to Georgia. Nabors did not take the stand in his own defense, electing simply to attack Warner's credibility and other aspects of the government's case.

### 1. *Destruction of the Evidence*

Two months before Nabors' trial, the Georgia Bureau of Investigation (G.B.I.) destroyed the alleged contraband taken from the burning plane. As a result, federal authorities could not comply with Nabors' motion to inspect and test the prosecution's evidence. Nabors argues the government's actions deprived him of due process, requiring the exclusion at trial of the laboratory analyses of the seized material and the dismissal of at least the substantive counts of the indictment.

■ Clearly a defendant in a drug prosecution has a due process right to have an expert of his choosing perform an independent analysis on the seized substance. *See United States v. Gaultney,* 606 F.2d 540, 545 (5th Cir.1979), *modified on other grounds,* 615 F.2d 642 (5th Cir.1980), *rev'd on other grounds sub. nom, Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *cf. Barnard v. Henderson,* 514 F.2d 744, 746 (5th Cir.1975) (criminal defendant has right to examine, through his own expert, critical evidence subject to varying expert opinion). The government has a concomitant responsibility to try in good faith to preserve important material and to locate it once the defendant moves for discovery. *Armstrong v.*

*Collier,* 536 F.2d 72, 78 (5th Cir.1976); *United States v. Bryant,* 439 F.2d 642, 651 (D.C. Cir.1971). The government does not dispute its responsibility under the law.

■ The issue here is whether the *mistaken* destruction of the material, so that the defendant cannot examine it, requires the exclusion of testimony as to the nature of the material by the government witness who tested it. The first question is whether Nabors is entitled to exclusion under a *per se* rule since the identification of the material as marijuana and methaqualone was central to the prosecution, at least for the substantive offenses. We think not. Two cases are helpful in this conclusion. The recent Supreme Court decision in *United States v. Valenzuela-Bernal,* 458 U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), involved the government's deportation of potential witnesses, thus putting them beyond the subpoena reach of the defendant. The Court, in a thorough discussion of related cases involving the deprivation of evidence to the defendant, held there to be no due process violation unless the defendant made some plausible showing that the evidence would have been material and favorable to his defense. *Id.* at ——, 102 S.Ct. at 3448, 73 L.Ed.2d at 1205–06. The seminal case in our Circuit involved the government's refusal to allow the defendant to inspect the alleged murder weapon and a 75% destroyed bullet which killed the victim. Government ballistics experts testified that the bullet came from defendant's gun. The Court reversed the defendant's conviction, reasoning the bullet was "a piece of critical evidence whose nature is subject to varying expert opinions." *Barnard v. Henderson,* 514 F.2d at 746.

There is no evidence in this case to suggest that experts would have disagreed as to the identification of the seized material. Nor in the experience of this Court in cases of this kind, unlike bullet cases, have we found varying opinions among experts as to the identification of these two substances.

■ Rather than a *per se* rule of exclusion, the test in this Circuit focuses on "the

materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its nonavailability to the defense." *United States v. Herndon,* 536 F.2d 1027, 1029 (5th Cir.1976). Other circuits have also looked to the government's culpability and the prejudice to the defendant. *See United States v. Picariello,* 568 F.2d 222, 227 (1st Cir.1978); *cf. United States v. Loud Hawk,* 628 F.2d 1139, 1152–53 (9th Cir.1979) (en banc) (majority opinion on issue by J. Kennedy) (looking to these factors but indicating the issue is generally not one of constitutional dimensions), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980), —— U.S. ——, 103 S.Ct. 755, 74 L.Ed.2d 972 (1983). Without discounting the right of defendants to examine the material they are charged with possessing, we hold that where the material has been destroyed in spite of the government's good faith attempt to preserve it, testimony as to the nature of the material need not be suppressed absent some showing that the testing of the material by another expert would have been reasonably likely to produce evidence favorable to the defendant.

Nabors admits there is no indication that the government acted with improper motive when it destroyed the alleged contraband. *See United States v. Herndon,* 536 F.2d at 1029. The destruction appears to have been a mistake, which occurred despite the efforts of federal and local law enforcement officials to have the evidence preserved. Briefly, after Michael Warner's trial in state court, the local sheriff's office returned the seized material to the Georgia Bureau of Investigation laboratory with instructions that it should be preserved. Prior to Nabors' indictment, an Assistant United States Attorney spoke by telephone to the G.B.I. agent in charge of the case, requesting that G.B.I. preserve the evidence for use in a federal prosecution. Unfortunately, a communication breakdown resulted in the destruction of the evidence by the director of the G.B.I. laboratory. Thus, while in retrospect the government perhaps should have done more to ensure the preservation of the evidence, it clearly did not act "for the purpose of inflicting a disadvantage upon the defendant[ ]," *United States v. Gordon,* 580 F.2d 827, 837 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978), 439 U.S. 1079, 99 S.Ct. 860, 59 L.Ed.2d 49 (1979), or as part of a policy of "systematic non-preservation" of evidence, *United States v. Bryant,* 439 F.2d at 652. The government agents knew the law and acted accordingly. Thus exclusion is not necessary to sanction or instruct the government for a violation of law, as is the rationale for some exclusionary rules.

■ There is virtually no likelihood that the absence of the alleged contraband affected the verdict in a manner prejudicial to Nabors. *United States v. Gordon,* 580 F.2d at 837. The government, through various witnesses, explained the absence of the evidence to the jury. It presented overwhelming evidence showing the substances were indeed marijuana and methaqualone. The G.B.I. laboratory director testified that he tested the substances and found them to be the two drugs in question. The prosecution presented photographs of the seized material. The local law enforcement agent who removed the material from the burning plane testified that he smelled marijuana. The pilot, Michael Warner, testified the cargo he picked up from Nabors in Colombia consisted of marijuana and methaqualone. According to Warner, Nabors had agreed to pay him $50,000 to transport 900 pounds of marijuana. Nabors had a full opportunity to cross-examine these witnesses. It seems clear that the absence of the material did not deprive Nabors of any useful evidence. He presented no evidence suggesting the material was anything other than the contraband charged. In short, the absence of the seized evidence did not deprive Nabors of a fundamentally fair trial. *See United States v. Herndon,* 536 F.2d at 1030.

2. *Admission of Evidence of Prior Silence*

The airplane was insured. At trial, the prosecution presented, in its case in chief, evidence that Nabors had failed to respond to a request by the insurance company for a statement as to Nabors' involvement in the

use and damage of the aircraft. Nabors immediately objected to the evidence, asserting that its introduction violated the self incrimination and due process clauses of the fifth amendment to the Constitution. Emphasizing that he did not intend to testify in his own behalf, Nabors reasoned that the evidence improperly enabled the prosecution to comment on his silence and allowed the jury to infer guilt therefrom.

 We decide the constitutional issue on the assumption that the evidence was relevant. Nabors objected and appealed purely on fifth amendment grounds. We generally do not review evidentiary rulings except on the grounds asserted in the contemporaneous objection. *See United States v. Arteaga-Limones,* 529 F.2d 1183, 1198–99 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); *United States v. Fendley,* 522 F.2d 181, 185–86 (5th Cir. 1975). In any event, questions of relevance fall within the broad discretion of the trial court. *United States v. Linetsky,* 533 F.2d 192, 204 (5th Cir.1976); *United States v. Dobbs,* 506 F.2d 445, 447 (5th Cir.1975).

The constitutionality of admitting the evidence is difficult to decide. The leading Supreme Court cases on the prosecution's use of a defendant's silence are not directly on point. In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Court, in a *post-arrest* silence case, held the government cannot, consistent with due process, bring up at trial a defendant's silence after receiving *Miranda* warnings, even for impeachment purposes. *See also United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (same result reached based on Supreme Court's supervisory power over federal courts). In *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), however, the Court held that the government can use *pre-arrest* silence to impeach a defendant. *See also Lebowitz v. Wainwright,* 670 F.2d 974 (11th Cir.1982). The present case, involving pre-arrest silence, differs in two critical respects from *Doyle* and *Jenkins* and the other cases concerning the use of a defendant's silence. First, the government introduced evidence of defendant's silence in its direct case in a trial in which the defendant never testified. In virtually all the major prior silence cases, the prosecution raised the issue on cross examination or rebuttal in an effort to impeach the defendant-witness. The logical theory of admissibility in this context is that the silence amounts to a prior inconsistent statement. Second, the silence here did not occur in response to a governmental inquiry as is usually the fact in cases dealing with the point. A private insurance company asked Nabors to cooperate in its own investigation of the damage to the plane. The insurer sent its inquiry one and one-half years before the indictment of Nabors. No *Miranda* warnings were given, and none had to be.

Under one view, this latter distinction might be dispositive of the fifth amendment argument in this case. In a concurring opinion in *Jenkins,* Justice Stevens, joined by retired Justice Stewart, wrote:

The fact that a citizen has a constitutional right to remain silent when he is questioned has no bearing on the probative significance of his silence before he has any contact with the police ... When a citizen is under no official compulsion whatever, either to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment. For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. A different view ignores the clear words of the Fifth Amendment.

447 U.S. at 243–44, 100 S.Ct. at 2132 (Stevens, J., concurring) (footnote omitted). According to Justice Stevens, the prosecution can raise prior silence, even if the defendant does not elect to testify, as long as the evidence is relevant and the silence was not in response to governmental inquiry. *Id.* at 244 n. 7, 100 S.Ct. at 2132 n. 7.

A majority of the Supreme Court has never adopted Justice Stevens' analysis, however, so that theory cannot control the

decision here. Only one lower court has to our knowledge adopted the Stevens approach. *United States v. Robinson,* 523 F.Supp. 1006, 1010–11 (E.D.N.Y.1981), *aff'd,* 685 F.2d 427 (2d Cir.1982). *Robinson* held that the prosecution did not infringe defendant's fifth amendment privilege by raising, in its case in chief in a counterfeiting trial in which defendant did not testify, defendant's silence in the face of an implicit accusation by a cashier that he had handed her counterfeit money. Even there, the evidence might be admissible without the Stevens rationale. *Robinson* involved silence combined with action at the time the crime was committed. When the *Robinson* cashier handed back the tendered bills and asked for real money, the defendant, without saying anything, handed the cashier genuine money. The *Robinson* decision differs from the case at bar in that here the silence occurred independent from the commission of the crime.

■ We premise our decision that no reversible error occurred in this case on four rationales. *First,* it seems clear that if Nabors had made some statements to the insurance company, the prosecution could have used them, as not having been compelled by the government. *See United States v. Moeller,* 402 F.Supp. 49, 53–56 (D.Conn.1975). Presumably, if it could have used Nabors' statements against him, assuming relevancy, it should be able to use his silence against him, assuming relevancy. The principle that runs through the cases involving silence is that the government cannot use a defendant's assertion of the constitutional privilege against self-incrimination to incriminate him. *E.g., Doyle v. Ohio,* 426 U.S. at 618, 96 S.Ct. at 2245. Silence without the claim of constitutional privilege does not implicate that principle of fairness. The Supreme Court has held that the fifth amendment privilege "is not self-executing," at least where, as here, the inquiry does not obviously call for an incriminating answer. *Roberts v. United States,* 445 U.S. 552, 559, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980). *See also United States v. Kordel,* 397 U.S. 1, 9–10, 90 S.Ct. 763, 768, 25 L.Ed.2d 1 (1970); *United*

*States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 113, 47 S.Ct. 302, 306, 71 L.Ed. 560 (1927). Nabors simply did not respond to the insurance company's general request for an account of his involvement with the plane. He never asserted the privilege. Because he did not claim it at the time of the silence, he could not claim it at trial.

*Second,* the evidence here is more than testimonial in nature. Certainly the actions of a defendant which are inconsistent with innocence are admissible without regard to the fifth amendment privilege. Here the point the government was presenting to the jury was Nabors' failure to make a claim for the insurance proceeds to which he was entitled if he was innocent of criminal involvement with that plane. In closing argument, government counsel, commenting on defense attorney's suggestions that Nabors did not grant Mike Warner permission to use the plane for criminal activity, said:

> If you believe that, don't you reckon Mr. Nabors would've said, "Mike, you took my airplane and committed a crime in it. I don't want nothing to do with you." ... And if it was somebody taking his plane without authorization and running off and committing a crime in it and burning it up, don't you know he'd come up to the insurance company and say, "Look here, I've got a loss that's covered by your insurance, and I demand payment." He didn't do that.

Viewed as action, not silence, the evidence does not implicate the fifth amendment privilege against compelled testimony. We need not concern ourselves as to whether there were innocent explanations for this action that rob it of evidentiary value. None were argued.

*Third,* we are quite aware of the absence of cases which allow the use of silence in the government's case in chief. Just two and one-half years ago, the Second Circuit commented that it could find "no decision permitting the use of silence, even the silence of a suspect who has been given no *Miranda* warnings and is entitled to none,

as part of the Government's direct case." *United States v. Caro*, 637 F.2d 869, 876 (2d Cir.1981) (suggesting the district court's admission of evidence of silence in that case might have been error, but holding the error harmless). *See also United States v. Lewis*, 651 F.2d 1163, 1165–69 (6th Cir.1981) (reversing conviction where government agent testified on direct to defendant's silence following *Miranda* warnings). The government cites only one case in which a court allowed the prosecution to comment on a defendant's silence in its case in chief. *United States v. Robinson*, 523 F.Supp. at 1011, the case of silence combined with action at the time of the crime's commission.

Even with the lack of authority for admissibility, however, we cannot figure out why the case should be reversed because of the admission of this evidence. Relevant evidence is, as a general proposition, admissible unless there is some reason for its exclusion. Fed.R.Evid. 402. That the evidence might have called attention to defendant's failure to testify, the general thesis of the argument on appeal, is not persuasive. Much incriminating evidence presented by the prosecution in criminal cases cries out for an explanation by the defendant and points up his failure to testify. The two cases relied upon by defendant, *Helton v. United States*, 221 F.2d 338, 341–42 (5th Cir.1955), and *United States v. Sprengel*, 103 F.2d 876, 882–83 (3rd Cir. 1939), are readily distinguishable. In *Helton* the questions were asked by a police officer; in *Sprengel* by a government postal inspector. Nabors has given us no persuasive justification for reversing the trial court on this point.

*Fourth*, the prosecution presented substantial evidence of defendant's guilt, even without the evidence of Nabors' silence in response to the insurance inquiry. Michael Warner testified in detail about Nabors' hiring him to transport the marijuana from Colombia. He also testified to prior similar drug smuggling operations headed by Nabors. The government presented some corroborating testimony, especially about the prior similar acts, including a recording of a telephone conversation between Nabors and Warner in which they discussed a landing site. Nabors presented virtually no rebuttal evidence. In light of the other evidence of guilt, admission of the evidence amounted to harmless error, if error at all. *See United States v. Resnick*, 483 F.2d 354, 356–58 (5th Cir.), *cert. denied*, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973).

### 3. Admission of Evidence of Similar, Prior Acts

■ Over Nabors' objection, the district court admitted evidence that, four years before the drug smuggling operation charged, Nabors had been engaged with Warner in a series of virtually identical operations. The government's theory of admissibility, which the district court evidently accepted, was that the evidence went to defendant's intent to commit the crimes charged.

Under Fed.R.Evid. 404(b), evidence of other crimes is admissible to establish, among other things, intent but is inadmissible to show the defendant's character. To be admissible, the evidence must satisfy a two-part test:

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice ....

*United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc) (footnote omitted), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

Nabors acknowledges the evidence went to an issue other than character. The extrinsic offenses, involving related drug smuggling operations, require the same intent as the charged offenses, and, based on Warner's detailed testimony and the corroborating evidence, the jury could find that Nabors committed the extrinsic offenses. *United States v. Beechum*, 582 F.2d at 913.

The question is whether the danger of unfair prejudice substantially outweighed the evidence's probative value. The answer to this question is generally for the trial judge. "[T]he decision to admit extrinsic

[crime] evidence can be disturbed only for an abuse of discretion." *United States v. Benton,* 637 F.2d 1052, 1056 (5th Cir.1981).

The evidence had substantial probative value. Nabors' assertion to the contrary, his criminal intent appears to have been very much in issue. Through cross-examination of government witnesses, Nabors suggested that he had not operated the airplane in a furtive manner indicative of criminal conduct. The defense brought out, for example, that the insurance policy on the plane provided detailed information about Nabors and that Nabors readily identified himself to airport employees. In his closing argument, defense counsel directly raised the question of criminal intent: "A friend [Nabors] lets him [Warner] fly, there's nothing wrong with that." Nabors evidently hoped the jury might conclude he had nothing to do with the illegal drug smuggling operation. In any event, the former Fifth Circuit has held that in a conspiracy case in which the defendant pleads not guilty, extrinsic offense evidence is admissible in the government's case in chief unless the defendant has affirmatively removed the issue of intent. *United States v. Roberts,* 619 F.2d 379, 383 (5th Cir.1980).

The evidence cannot be attacked as unnecessary or cumulative. Nabors aggressively challenged Warner's credibility, emphasizing that the government's key witness was an admitted perjurer and convicted felon. In addition to Warner's testimony about the prior offense, the government introduced a tape recording of a telephone conversation between Nabors and Warner just prior to some of the alleged prior offenses in which the two men discussed a landing site for an upcoming flight by Warner. Thus the evidence of the extrinsic drug smuggling operations, which also entailed an airplane flown by Warner, bolstered the potentially shaky primary evidence of intent.

Balanced against its probative value, the extrinsic offense evidence does not seem to have been unduly or unfairly prejudicial. The judge properly instructed the jury both at the time the government introduced the evidence and prior to sending the jury out that it could not consider the extrinsic crime evidence as proof that Nabors committed the charged offenses. He stated the evidence should be considered only in regard to intent. The limiting instruction minimized the potential for unfair prejudice. *United States v. Black,* 595 F.2d 1116, 1117–18 (5th Cir.1979).

### 4. *Denial of Motion to Compel Government to Affirm or Deny Existence of Wiretap Interceptions*

Pursuant to 18 U.S.C.A. § 3504, Nabors moved just prior to trial to require the prosecution to disclose the use of any electronic surveillance or monitoring in the criminal investigation. The district court denied the motion, terming it both insufficient and untimely.

■ The controlling statute, 18 U.S.C.A. § 3504, provides in effect that when a defendant claims evidence is inadmissible as illegally obtained by use of an electronic device, the government must affirm or deny the use of the electronic device.

(a) In any trial ... before any court ... of the United States—

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;

\* \* \* \* \* \*

(b) As used in this section "unlawful act" means any act [involving] the use of any electronic, mechanical, or other device ... in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

The claim to trigger this section must be more than an allegation that unlawful surveillance may have occurred. While a mere assertion of illegal wiretapping unsupported by evidence may suffice, it must be a positive statement that unlawful surveillance did in fact take place. *In re Baker,* 680

F.2d 721, 722 (11th Cir.1982); *United States v. Rubin,* 559 F.2d 975, 989 (5th Cir.1977), *judgment vacated and remanded on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978), *rev'd in part on other grounds on remand,* 591 F.2d 278 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979); *United States v. Tucker,* 526 F.2d 279, 282 (5th Cir.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976).

█ Nabors submitted two affidavits in support of his motion. One, by his attorney, stated essentially that government documents revealed a policy of the National Security Agency (NSA) to monitor international telephone conversations. The other, signed by Nabors himself, stated that Nabors had been a party to international telephone calls concerning the subject of the indictment. It continued:

> [B]ased on NSA's policy of surveillance, I am informed and *believe,* and thereon allege, that some or all of my aforementioned telephone conversations with persons located in Central and South America, were, *in all likelihood,* intercepted by the United States of America (emphasis added).

Without considering the timeliness of Nabors' motion, we agree with the district court that it is legally insufficient. *First,* Nabors' affidavit is devoid of an unequivocal statement that his calls were actually monitored. *See, e.g., United States v. Rubin,* 559 F.2d at 989 (statement by defendant that he has "reason to believe" his conversations were monitored is insufficient). *Second,* Nabors did not allege, as the statute suggests, a causal link between the monitoring and prosecution. Rather, he asked the court to "make inquiry [to] determin[e]" whether any evidence was the fruit of illegal surveillance.

AFFIRMED.