**UNITED STATES of America,**

**v.**

**Ralph ELKINS, Eugene Tillman, Frank Fuentes, and Silvio Monrabal, Defendant.**

**Crim. No. 84–133 HL.**

United States District Court, D. Puerto Rico.

June 29, 1984.

Wilfredo Figueroa Vélez, Hato Rey, Puerto Rico, for defendant.

Juan A. Pedrosa, Asst. U.S. Atty., Daniel Lopez Romo, U.S. Atty., Crim. Section, Old San Juan, P.R., for plaintiff.

## ORDER

LAFFITTE, District Judge.

Defendants Elkins, Calhoun, Fuentes, U.S. citizens, and Monrabal, Cuban, were indicted, tried and convicted before this Court [1] for possession with intent to distrib-

---

**1.** The District of Puerto Rico was the point of entry where the defendants entered the United    States following the commission of the offenses.

ute 5,320 lbs. of marijuana, with a street market value of $3.2 million, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 955a(a) and (f). The three U.S. citizens were also tried and convicted of violating 21 U.S.C. 955a(b).[2]

Succinctly,[3] the evidence presented at the three-day trial established that on February 27, 1984, the U.S. Coast Guard cutter ESCAPE spotted, observed, and approached the M/V BLUE LIGHT on the high seas, nine miles from Cape Santo Domingo, Bahamas. Defendant Elkins identified himself to the Coast Guard as Master of the vessel. The Coast Guard subsequently boarded the vessel. The officer in charge, Lt. John McCarthy, proceeded to check the vessel's documentation, which he found in order. Four other members of the boarding party made a security sweep. With information voluntarily supplied by defendant Elkins, they found a shotgun and a loaded pistol.

Lt. McCarthy testified at trial as to his observations of the equipment on the vessel, describing sophisticated electronic equipment, and two disproportionately large fuel tanks for the size of the BLUE LIGHT, of approximately 46 feet, which took up a sizeable area in the engine room. He also observed fresh paint, tools, cans, and grindings on board. He further observed man-size welded areas and patches on the fuel tanks. The color of the paint in the cans matched the color of the tanks. Lt. McCarthy was doing the survey of the vessel initially accompanied by codefendant Elkins. McCarthy testified that upon being questioned by him, defendant Elkins replied that he had been aboard the vessel for about four days, had left Bimini, Bahamas, upon instructions from the owner of the vessel to test it for future use. De-

fendant Elkins answered most of the questions asked by him relative to the vessel.

However, Lt. McCarthy testified that at one point during these conversations, Elkins, stated that he was not going to answer any more questions and that he, Elkins, "was taking the Fifth." At this point in time during the trial, counsel for defendant requested and obtained from the Court an instruction to the jury that no inference of guilt was to be inferred from Elkins' exercise of his Fifth Amendment constitutional rights.

After consulting with the Commanding Officer, Lt. McCarthy examined the contents of the tanks on board the M/V BLUE LIGHT. The transfer of fuel from the tanks and the subsequent drillings revealed the presence of numerous bales of marijuana concealed inside. After the presence of marijuana was confirmed through a field test performed by Lt. McCarthy inside the engine room, he informed the defendants that the substance found showed positive for T.H.C., the active ingredient in marijuana.

Lt. McCarthy testified that he told defendants at that point in time, that he was seizing the vessel, and that they were under arrest for possession of marijuana.[4] He testified that the defendants showed no surprise at the situation. He then proceeded to read to the defendants the MIRANDA warnings both in English and Spanish.

Having presented no evidence at trial, defendants have moved for a new trial on five grounds. The first two, (a) that the Court erred in denying defendants' motion for acquittal, and (b) that the verdict is contrary to the weight of the evidence are so devoid of merit, they are hereby DENIED without further consideration for the

**2.** Defendant Monrabal, because of his alienage, was not amenable to charges under Section 955a(a) of Title 21 U.S.Code. He was charged on one count for violation of Title 21 U.S.C. Sections 955a(a) and 955a(f), and Title 18 U.S.C. Section 2.

**3.** The facts concerning the search were developed at a pretrial suppression hearing before Magistrate Arenas.

**4.** Defendants' motion to suppress the marihuana seized by the Coast Guard officers was denied after a hearing before Magistrate Arenas, whose report and recommendation was subsequently accepted by the undersigned Judge.

same reasons stated from the bench.[5] The Court held from the bench at the end of testimony that the evidence was overwhelming against defendants, and that it was for the jury to assess and weigh the evidence presented and to draw all reasonable inferences from the facts as to the guilt or innocence of the defendants. In sum, the jury decided this case on the same considerable evidence that the undersigned Judge had before him in denying the motion for acquittal. *U.S. v. Gibson,* 675 F.2d 825, 829 (6th Cir.1982); *U.S. v. Artuso,* 618 F.2d 192, 195 (2nd Cir.1980), cert. denied, 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1982); *U.S. v. Lopez,* 625 F.2d 889, 897 (9th Cir.1980).

Defendants' additional grounds for a new trial are predicated on (1) the alleged erroneous admission of evidence as to observations made and testified to by Lt. McCarthy that defendants showed no surprise when informed about the presence of marihuana; (2) that the Court erred in charging the jury, and (3) that defendant Elkins' exercise of his Fifth Amendment rights was improperly used by the Government.

Defendants filed a joint brief in support of their motion for new trial. They argue that McCarthy's testimony at trial as to his observations of their reactions, combined with the instruction given to the jury at the end of the case regarding general intent deprived them of a fair trial, in that the Government improperly used their silence in its case in chief.

Defendant Elkins argues in addition that McCarthy should not have stated that Elkins "took the Fifth" during the course of routine questions on board the vessel.

■ The disposition of a motion for new trial rests within the sound discretion of the trial judge, and will be disturbed on appeal only for abuse of discretion, or misapplication of law. *U.S. v. Johnson,* 327 U.S. 106, 111, 66 S.Ct. 464, 90 L.Ed. 562 (1946); *U.S. v. Malavet Rodriguez,* 738

F.2d 13, 17 No. 83–1445, Slip Op. at 7 (1st Cir. June 26, 1984).

■■ The Court finds that the testimony of Lt. McCarthy did not impermissibly comment on the silence of the four defendants, and his testimony was properly admitted into evidence. McCarthy did not testify that defendants refused to comment, or that they refused to answer questions, or discuss the silence of defendants in any manner. Lt. McCarthy testified to his own personal observations as to the demeanor of the defendant after the search of the vessel resulted in the discovery of marijuana. See Federal Rules of Evidence 701(a). Actions of a defendant which are inconsistent with innocence are admissible without regard to the Fifth Amendment privilege. *U.S. v. Nabors,* 707 F.2d 1294 (11th Cir. 1983).

The case law cited by the defendants in support of their assertions of unconstitutional use of their silence can be distinguished based on the circumstances of this case. The case law cited by defendant stands for the proposition that the Government may not use the silence of a suspect, or accused, in its direct case. See *U.S. v. Gonzalez Caro,* 637 F.2d 869, 876 (2d Cir. 1981). In this case the silence of the accused was not so used. Lt. McCarthy's testimony did not include a scenario on board the BLUE LIGHT of interrogation and defendants' refusal to answer. Rather, McCarthy testified to his own personal observations of defendant's conduct. Lt. McCarthy's unsolicited comment about the demeanor of the defendants at the time of the search cannot be viewed as impermissible use by the Government of the silence of the accused.

■ Defendants attempt to strengthen their argument by implying that McCarthy's testimony was damaging because the Court later instructed the jury as follows:

"Intent ordinarily may not be proved directly because there is no way of scru-

---

**5.** These grounds have not been briefed by defendants. We assume that defendants rely on the same grounds extensively argued by their counsel during their motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

tinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by defendant, and all other facts and circumstances in evidence which indicate his state of mind.

"You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence." [6]

This instruction should not be taken out of context to imply the existence of erroneous statements. The entire charge to the jury must be read as a whole. The Court instructed the jury that the Government would need to prove that the defendants act without specific intent to commit the crime involved, and that defendant acted knowingly. The Court also instructed that the prosecution needed to establish its case beyond all reasonable doubt and that the law never imposes upon a defendant the burden or duty of calling witnesses or producing evidence. And finally, the Court instructed the jury that defendant does not need to prove his innocence, and that the law does not compel a defendant to take the witness stand and testify and no presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that defendant has not testified. Not only did the Court charge the jury as to defendant's right to remain silent and not testify, at the close of evidence, but also during course of trial, when Lt. McCarthy testified. Given the totality of the charge to the jury, the defendant has not been prejudiced and therefore is not entitled to a new trial. See, *U.S. v. Ryan*, 478 F.2d 1008, 1015 (5th Cir.1973).

 Finally, the Court gave admonishing instructions to the jury regarding the testimony of Elkins "taking the Fifth." Such instruction clearly explained to the jury that no inferences of guilt or otherwise

should be drawn from defendant's declining to testify on his own behalf. Under the "interest-of-justice" test, the trial judge has broad powers to determine whether to grant a new trial. *U.S. v. Malavet Rodriguez, supra.*

Therefore, given the overwhelming evidence of the guilt of the defendants, the cautionary instructions given to the jury regarding the Fifth Amendment and its use by defendants, and finally, given the fact that the Government did not question any of the witnesses as to the silence of the defendants, this Court finds that no constitutional violations occurred and that defendants' motion for new trial should be DENIED.

WHEREFORE, defendants' motion for new trial is hereby DENIED.

IT IS SO ORDERED.

---

**6.** As to this instruction, see *U.S. v. DeWolf*, 696 F.2d 1 (1st Cir.1982), and cases cited therein.