[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-13064

_____

D. C. Docket No. 05-00026-CR-5-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL EDWARD PAIR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(May 28, 2008)**

Before EDMONDSON, Chief Judge, KRAVITCH and ALARCÓN,* Circuit
Judges.

PER CURIAM:

_____

* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

Michael Edward Pair appeals his conviction and sentence following a guilty plea for manufacturing or possessing with intent to distribute 5 or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).

**Background**

On May 12, 2005, authorities searched Pair's home and seized 7.88 grams of methamphetamine and methamphetamine laboratory equipment including pseudoephedrine, glass and Teflon jars containing methamphetamine solutions, muriatic acid, a scale, glass tubes, dishes, and bowls. Pair's fingerprints were lifted off several of the items. A portion of the 7.88 grams was "ice;"[1] the amount of methamphetamine that was not "ice" totaled less than 5 grams.

On August 2, 2005, a grand jury indicted Pair and his co-defendant and girlfriend Rhonda Michelle Couch ("Couch") for (1) conspiracy to manufacture, distribute, and possess with intent to distribute more than 5 grams of actual methamphetamine ("Count 1"), and (2) manufacturing and possession with intent to distribute more than 5 grams of actual methamphetamine ("Count 2").

During a brief recess before jury selection was to begin on November 14, 2005, Pair and the prosecutor reached an oral agreement whereby Pair would cooperate and plead guilty to Count 2 in exchange for a dismissal of Count 1 and

---

[1] "Ice" is a term for a certain type of methamphetamine.

dismissal of the charges against Couch. The court then placed Pair under oath and conducted a Rule 11 colloquy. The court asked Pair about his background, education, whether he had any history of mental illness, and whether he was under the influence of any medications or drugs. The court then informed Pair of his constitutional rights that he was waiving, including his right to trial, counsel, testify, and appeal. The judge also read the indictment, confirmed with Pair that those were the charges he faced, and informed Pair of the statutory mandatory minimum sentence he faced.

At that point, the court asked Pair if he had any questions. Pair stated that he did. He asked whether the Government would enter into a sentencing agreement and to that question the judge responded that it was up to the prosecutor. After Pair's counsel stated that the prosecutor's office would not do it, the judge stated, "[The prosecutor] is telling you he won't do it—or his office won't do it."

The judge, defense counsel, and defendant then had a discussion about whether the prosecutor's office could agree to a sentence recommendation. During that discussion, the judge stated that "We need to make [the decision as to whether to plea or go to trial] soon because I've got people downstairs that either need to come up here for jury selection or need to be sent home. But if you want to go forward with your trial, that's what we'll do, but it will be as to [the] indictment.

3

I'm assuming it will be to the indictment."

Pair then asked the judge how much difference pleading guilty would make to his sentence. Pair indicated that he did not feel he was getting a benefit by entering a plea. At that point, the judge and Pair's attorney explained that the prosecutor could file a substantial assistance motion and that the Government could recommend a downward departure. The judge stated that such a motion was "entirely up to the United States Attorney's Office. I have no role in the decision and neither does [the prosecutor]." The judge stated, however, that the final decision would be left to the court. The judge then said, "If you go to trial and are convicted, found guilty by a jury, I've never seen it happen where someone receives the benefit of [such a motion] after having gone to trial. I've never seen it." Pair stated that he understood this.

The court then sought to determine if a sufficient factual basis existed to support a guilty plea. The judge had the prosecutor read the facts the Government intended to prove and Pair agreed with those facts. Pair and the judge then had a discussion about the weight of the methamphetamine and whether Pair manufactured it with the intent to distribute it. Pair admitted that he had possessed 7.88 grams and the judge asked if Pair had intended to manufacture the methamphetamine with the intent to distribute. The judge stated that "distribute

4

doesn't necessarily mean to sell." Pair responded, "Right. I thought I was pleading to the second one." Defense counsel then explained to Pair that he was pleading to the second count. The judge stated, "And that is the charge in Count 2. It is not a conspiracy count, but is a charge of manufacturing. Pair responded, "It's saying I manufactured," and then requested time to speak to his counsel. After they spoke, Pair asked the court, "I understood the question to be did I manufacture that with the intent to distribute. I did manufacture it."

As for the distribution element, the judge asked if Pair manufactured it with the intent to distribute it. Pair's counsel responded, "That's the toughest question the court's [asked]. That's our defense." The judge replied, "Well, he doesn't have any defense if he goes forward with the plea." After some further discussion, the judge told Pair what constituted "distribution"; she stated, "You don't necessarily have to go out on the street and make a sale or go to a stranger and make a sale. You can have a party and let someone share in your methamphetamine. That would be distribution. . . . If you shared it, then you're distributing it." Pair stated that his intention with the methamphetamine was to "smoke it up" with "whoever happened to be there." The judge then stated that there was enough evidence to support a guilty plea to Count 2 and Pair pleaded guilty to the charge.

5

Before Pair's sentencing hearing, however, he filed a motion to withdraw his guilty plea. Among other things, he stated that he was not adequately advised of the nature of the charge against him (in violation of Rule 11) and that he did not understand the relation between the law and the facts that he admitted in pleading guilty. The district court denied the motion following a hearing.

Pair then sought to represent himself pro se with the assistance of standby counsel. The court held a hearing on Pair's motion to proceed pro se. The court asked Pair about his education and training as a military technician, whether he had a history of mental illness, and his prior experience with court-appointed counsel.[2] The court told Pair that if he proceeded without counsel that he would still be required to follow the rules of procedure and evidence and that, as a prisoner, he had limited access to legal research materials. Pair stated that he understood this. The court also informed Pair that the court was of the opinion that it was not "in your best interest to proceed" pro se. The court warned Pair that criminal sentencing in the federal courts is complicated and that because he did not have any training or experience in the application of the Guidelines there was "a huge risk . . . in going forward without counsel." Stating that he understood these risks, Pair reaffirmed his desire to proceed pro se and the judge granted Pair's motion.

---

[2] Pair had appointed counsel on at least two prior occasions; once, counsel won a motion to suppress.

Before the sentencing hearing, Pair filed a Motion for Independent Testing of the methamphetamine. He filed the motion on April 10, 2006[3]—several months after his November 2005 guilty plea and well after the August 15, 2005 discovery order in which the court ruled that all pretrial motions were to be filed within 10 days of the order. The court denied Pair's motion as moot since he had already pleaded guilty to the offense.

Although the applicable Guidelines range was 70 to 87 months, Pair faced and received the statutory minimum sentence of 120 months.

On appeal, Pair claims that (1) the court improperly participated in Pair's plea negotiations; (2) he did not understand the nature of the charges to which he pleaded guilty and, therefore, the court improperly denied his motion to withdraw his guilty plea; (3) the judge erred by denying the motion to permit independent testing of the methamphetamine; and, (4) the judge erred by permitting Pair to proceed pro se. We discuss each claim in turn.

**Discussion**

**A. Improper participation in the plea discussion**

Pair contends on appeal that the district court impermissibly participated in the plea negotiation because the judge (1) implied without asking the Government

---

[3] It was originally filed on March 24, 2006 but was not accepted because of filing deficiencies; Pair was able to correct these deficiencies and re-filed it on April 10, 2006.

that the Government would not agree to a sentencing agreement, (2) coerced the guilty plea by hurrying Pair, (3) stated that she had never seen a downward departure motion made following a jury trial and conviction, and (4) implied that Pair would not prevail at trial because he did not have any defense if he proceeded with a guilty plea.

A judge cannot participate in the plea discussions between the Government and a criminal defendant. Fed. R. Crim. P. 11. Because Pair did not object at the district court to improper judicial participation in the plea, we review Pair's contention under the plain error standard. See United States v. Vonn, 535 U.S. 55, 59 (2002). Under plain-error review, the defendant has the burden to show that "there is (1) "error" (2) that is "plain" and (3) that it "affect[s] substantial rights." United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003). The Supreme Court has held that in order to meet the third prong, a "defendant who seeks reversal of his conviction following a guilty plea on the ground that the district court committed plain error under Rule 11 must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominquez Benitez, 542 U.S. 74, 83 (2004). Additionally, once the defendant has established the first three prongs, the reviewing court may then exercise its jurisdiction and correct the error, but only if it "seriously affects the fairness, integrity, or public

8

reputation of the judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993).

Pair argues that the judge's statements were coercive and, therefore, erroneous, and that this error is plain. Pair does not, however, suggest that there is a reasonable probability that the judge's statements were a "but for cause" of the guilty plea. In fact, a reading of the transcript suggests otherwise.

Pair and the prosecutor had already reached an agreement before the judge made the allegedly improper comments; further, those comments stem from questions Pair asked about his sentence and what benefits he would receive by pleading guilty. The judge's comments were all made in response to questions Pair asked the court. Thus, Pair has not met his burden to convince this court with "a reasonable probability" that the district judge's comments were the "but for cause" of his guilty plea.

## B. *Withdrawal of the guilty plea*

Pair next contends that the court erred in its denial of his motion to withdraw the guilty plea.

We review the denial of a request to withdraw a guilty plea for abuse of discretion. United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002). We will reverse a district court's decision on a motion to withdraw only if it is arbitrary or

unreasonable.  Id.

A district court may permit a defendant to withdraw his guilty plea before the imposition of a sentence for a "fair and just reason."  Fed. R. Crim. P. 11(d)(2)(B).  In determining whether a defendant has shown a "fair and just reason," the district court evaluates the totality of the circumstances, including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea."  Najjar, 283 F.3d at 1318.  "Moreover, when a district court accepts a guilty plea, it must ensure that the three core concerns of Rule 11 . . . have been met: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea."  Id. (citation and quotation marks omitted).

Pair asserts that the district court erred in its determination that Pair understood the nature of the charges against him.  More specifically, Pair claims that he did not understand the nature of the "distribution" or "manufacturing" elements of the crime.  Pair, however, does not effectively show exactly how he misunderstood the "distribution" element.  As for the "manufacturing" element, he

10

claims that he meant to plead guilty to "manufacturing" but he did not manufacture that portion of the methamphetamine that was "ice."

Rule 11 requires that a defendant must understand the nature of the charges against him. United States v. Jones, 143 F.3d 1417, 1418-19 (11th Cir. 1998). But the law does not require that the defendant pleading guilty must understand all the nuances of the law:

> For simple charges such as those in this case,[4] a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself.

See United States v. Dayton, 604 F.2d 931, 937-38 (5th Cir. 1979) (en banc).[5]

"'[T]here is no one mechanical way or precise juncture to which a district judge must conform in advising a defendant of the charges to which he is pleading guilty." United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). Instead, we assess each plea colloquy individually in the context of the entire record,

---

[4] The charge in Dayton was possession with intent to distribute marijuana.

[5] The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

examining such factors as the "simplicity or complexity of the charges and the defendant's sophistication and intelligence." Id. at 1323. "These matters are better committed to the good judgment of the district judge, who observes the defendant's demeanor, life experience, and intelligence." Id.

After reviewing the transcripts of Pair's Rule 11 plea colloquy and the hearing on his motion to withdraw the plea, we cannot say that the district court's denial was either arbitrary or unreasonable. The court complied with Rule 11. Pair's offense was a "simple charge"; thus, to satisfy Rule 11 under our binding precedent, the court had to read the indictment and provide an opportunity for Pair to ask questions. See United States v. Sanchez, 650 F.2d 745, 747-748 (5th Cir. 1981) (a reading of the indictment and the opportunity for the defendant to ask questions was sufficient to comply with Rule 11 where twenty-five year old migrant worker with seventh grade education and no criminal record was charged with possession with the intent to distribute marijuana). Here, the judge read the indictment and asked Pair if he understood the charges he faced. Pair said he did. The court also asked Pair if he had any questions.

Moreover, Pair's counsel and the court explained to Pair that the "distribution" element could be satisfied by showing that Pair intended to share the drugs with others. Pair also had ample opportunity to consult with his attorney and

Pair stated that he had discussed the plea with his counsel. Pair had "a couple of years" of college and had received training as an electronics technician in the Navy. Given Pair's experience as a defendant in prior criminal cases, his age, and his educational experience and training, we cannot say that the district court erred.

## C. Independent testing of the methamphetamine

Pair further contends that the district court erred by denying his motion to independently test the methamphetamine. Pair argues that he wants to perform testing to determine the amount of impurities, the weight, and whether the methamphetamine is "L" methamphetamine or "D" methamphetamine. He does not argue that the Government's weight calculation is incorrect; he just asserts that he has a due process right to test the substance and that the district court denied him the opportunity to exercise this right.

Pair's Motion for Independent Testing was untimely, as it was filed well after the district court's August 2005 discovery deadline and after he pleaded guilty. We, therefore, review the denial of Pair's motion under the plain error standard. United States v. Olano, 507 U.S. 725, 731-733 (1993) (forfeited claim of constitutional violation will be reviewed under the plain error standard); see also Fed. R. Crim. P. 12(c) (the district court can set a deadline for all pre-trial motions).

13

A defendant in a *prosecution* for a drug offense has a due process right to have an expert perform an independent analysis of the seized substance. See United States v. Nabors, 707 F.2d 1294, 1296 (11th Cir. 1983) (emphasis added). But a defendant does not have the same degree of due process protections at sentencing. United States v. Satterfield, 743 F.2d 827, 840 (11th Cir. 1984) ("The sole interest being protected is the right not to be sentenced on the basis of invalid premises or inaccurate information. Because the sentencing procedure is not a trial, courts have limited this right in order to prevent the sentencing hearing from becoming a full-scale evidentiary hearing").

Pair has not met his burden. Our due process concern that a defendant "not be sentenced on the basis of invalid premises or inaccurate information" does not come into play in this case because Pair makes no argument that he was sentenced on either invalid premises or inaccurate information. See Id. He does not argue, for example, that the Government's laboratory equipment malfunctioned or that the weight is inaccurate. Nor is the distinction between "L" methamphetamine and "D" methamphetamine legally significant in any way. Pair has certainly not shown plain error.

## D. *Pair's self-representation*

Pair argues that the court erred by allowing him to represent himself. He

states that the court should allow a defendant to represent himself only after a full inquiry into whether a waiver of the right to counsel is knowing, voluntary, and intelligent. Pair claims that the court did not inquire sufficiently.

The waiver of the right to counsel must be knowing, voluntary, and intelligent. United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995). This is a mixed question of law and fact that we review de novo. Id. The Government bears the burden of proving the validity of the waiver. Id.

If the record establishes that the defendant knew what he was doing and that his decision was "made with open eyes," this court will not overturn a district court's decision to allow a defendant to proceed pro se. See Faretta v. California, 422 U.S. 806, 835 (1975). We look at the record to ascertain whether the defendant was made aware of the dangers of proceeding pro se and whether he understood the decision he made. Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir. 1986). To determine whether the waiver is "knowing, voluntary, and intelligent," we consider several factors; they are: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's conduct with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of the rules of procedure, evidence, and courtroom decorum; (5) the

15

defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of trial. Cash, 47 F.3d at 1088-89. All factors do not need to point in the same direction, and the district court should hold a hearing to examine these factors. Id.

Here, Pair had a hearing in which these factors were considered. The court cautioned Pair that proceeding pro se was not in his best interest and that it involved a "huge risk." The court warned him that sentencing is complex and that it involves factual and legal issues that call for the assistance of an experienced attorney. Pair acknowledged this at the hearing and stated that he recognized that he was not such a person. The court inquired into Pair's education, whether he had any mental illnesses, the extent of his contact with lawyers, Pair's understanding of the charges and the possible penalty range, his experience at criminal trials, and whether standby counsel would be available. The judge found, and the record indicates, that Pair was not coerced and that he knew what he was doing. We are satisfied that the district court did not err.

Accordingly, we **AFFIRM**.

16