Heath A. WILKINS, Petitioner

v.

Paul K. DELO, Respondent.

No. 91–0851–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

May 16, 1995.

Sean O'Brien, Kansas City, MO, for petitioner.

Cassandra Kay Dolgin, Missouri Atty. General's Office, Jefferson City, MO and Ronald L. Jurgeson, Kansas City, MO, for respondent.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court is Heath A. Wilkins' First Amended Petition for Writ of Habeas Corpus, the State's[1] response, petitioner's traverse, and supplemental briefs on the issue of petitioner's competency. For the reasons set forth below, Mr. Wilkins' petition will be granted.

### I. Background

Petitioner pled guilty to first degree murder and was sentenced to death in the Circuit Court of Clay County, Missouri. The Supreme Court of Missouri affirmed on direct review. The Supreme Court of the United States granted certiorari on a limited issue and affirmed. Petitioner's state post-conviction motion was denied by the sentencing court, the Supreme Court of Missouri affirmed the denial, and the Supreme Court of the United States denied petitioner's writ of certiorari. Petitioner then filed the federal habeas corpus action currently before the Court.

In July of 1985, petitioner and three companions, Patrick Stevens, Ray Thompson and Marjorie Filipiak, devised a plan to rob Linda's Liquors, a small convenience store in Avondale, Missouri. Pursuant to the plan, on July 27, 1985, petitioner and Stevens entered the store and ordered a sandwich from the store clerk, Nancy Allen. Stevens then seized Allen and petitioner stabbed her repeatedly, inflicting fatal wounds. Petitioner and Stevens gathered cash and merchandise and left the store. The two later joined Thompson and Filipiak to split up the money. On August 10, 1985, petitioner, Stevens, Thompson and Filipiak were arrested for the murder of Nancy Allen.

On August 15, 1985, petitioner, then 16 years old, was certified by the juvenile court to stand trial as an adult. On October 17, 1985, petitioner appeared with appointed counsel, Fred Duchardt, for arraignment in the Circuit Court of Clay County, Missouri before the Honorable Glennon E. McFarland. (Cir.Ct.Tr. at 3).[2] Petitioner was charged with murder in the first degree, unlawful use of a weapon, and armed criminal action. (Cir.Ct.Tr. at 4–5). Petitioner, through counsel, entered a dual plea of not guilty by reason of mental disease or defect excluding responsibility and not guilty. (Cir.Ct.Tr. at 4). Mr. Duchardt informed the court that he questioned whether petitioner was competent to proceed and moved for a mental examination of petitioner. (Cir.Ct.Tr. at 4). The court granted the motion and ordered petitioner to be examined at a state hospital. (Cir.Ct.Tr. at 5).

On November 27, 1985, Dr. Steven Mandracchia, a clinical psychologist for the State Department of Mental Health, performed the mental examination. (Cir.Ct.Tr. at 9). On December 23, 1985, Mr. Duchardt requested and obtained leave of court for an additional mental examination. (Cir.Ct.Tr. at 5–6). The additional examination was performed in March of 1986 by Dr. William Logan, a forensic psychiatrist with the Menninger Clinic. (Cir.Ct.Tr. at 17–18). Sometime between

---

1. The named respondent in this action is Paul Delo, the Superintendent of the Potosi Correctional Center. For purposes of simplicity, the Court will refer to the respondent as "the State."

2. The Court will refer to the transcript of the arraignment, competency hearings, pleas of guilty and sentencing before Judge McFarland as the "Circuit Court Transcript," or "Cir.Ct.Tr."

these two examinations, petitioner informed his counsel that he wanted to enter a guilty plea and receive a death sentence.

On April 16, 1986, the court held a hearing on petitioner's competency to stand trial. On direct examination by Mr. Duchardt, Dr. Mandracchia testified that his evaluation of petitioner consisted of interviewing petitioner for approximately ninety-five minutes, reviewing information on petitioner's background and administering the Minnesota Multiphasic Personality Inventory ("M.M.P.I."). (Cir.Ct.Tr. at 9–11). Dr. Mandracchia testified that, based on his evaluation, he did not believe petitioner suffered from a mental disease or defect as defined by Chapter 552 of the Missouri Revised Statutes.[3] (Cir.Ct.Tr. at 11). Dr. Mandracchia also stated his belief that petitioner was competent to proceed to trial. (Cir.Ct.Tr. at 12).

Mr. Duchardt noted that Dr. Mandracchia had only recently been informed of petitioner's desire to plead guilty and receive the death penalty and asked Dr. Mandracchia if this information changed his opinion as to petitioner's competency. (Cir.Ct.Tr. at 12–13). Dr. Mandracchia stated that it did not. (Cir.Ct.Tr. at 13).

Dr. Logan also testified at the competency hearing. He stated that his evaluation of petitioner consisted of a five-hour psychiatric interview, six hours of psychological testing, and a review of petitioner's extensive psychiatric records. (Cir.Ct.Tr. at 17–18). Dr. Logan stated that he did not reach a definite conclusion as to whether petitioner was competent to proceed. (Cir.Ct.Tr. at 18). Dr. Logan testified that petitioner had a fairly good cognitive understanding of the court proceedings, but that he suffered from an emotional impairment that could interfere with his decision-making process and his ability to act in his own best interests. (Cir.Ct. Tr. at 22). Given these factors, Dr. Logan believed it was appropriate to describe his

opinion and allow the court to determine whether petitioner was competent to proceed. (Cir.Ct.Tr. at 22–23).

After Dr. Logan's testimony, the court found that petitioner was competent to proceed. (Cir.Ct.Tr. at 42). Petitioner then informed the court that he wished to proceed *pro se*. (Cir.Ct.Tr. at 42). In response to the court's questions, Mr. Duchardt and petitioner explained that petitioner wanted to proceed *pro se* because he wanted to plead guilty and seek the death penalty. (Cir.Ct. Tr. at 42–45).

The court advised petitioner of his right to an attorney and his right to proceed without counsel. (Cir.Ct.Tr. at 49–51). Petitioner stated that he did not want an attorney if the attorney could not assist him in seeking the death penalty. (Cir.Ct.Tr. at 52). The court warned petitioner of the problems he could encounter without counsel, but petitioner was unwavering in his desire to proceed without counsel and seek the death penalty. (Cir.Ct. Tr. at 52–59). The court instructed petitioner to think about his decision for a few days and ordered Mr. Duchardt to remain available to answer any questions petitioner might have. (Cir.Ct.Tr. at 59, 67).

The next hearing on petitioner's motion to proceed *pro se* was held April 23, 1986. The court again cautioned petitioner about the dangers of proceeding *pro se* and informed petitioner of the advantages of having counsel at the various stages of the proceedings. (Cir.Ct.Tr. at 70–79). Petitioner continued to assert that he wanted to proceed *pro se*. (Cir.Ct.Tr. at 70–79). The court provided petitioner with waiver of counsel forms, which petitioner signed and filed with the court. (Cir.Ct.Tr. at 83–87). The court accepted the waivers and granted Mr. Duchardt leave to withdraw, provided he remain available to petitioner for consultation. (Cir. Ct.Tr. at 87–88). At the close of the hearing, the court again advised petitioner to recon-

---

**3.** In 1985, Section 552.020.1 of the Missouri Revised Statutes provided that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Mo. Rev.Stat. § 552.020.1 (1985). Section 552.030.1 provided that "[a] person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect he did not know or appreciate the nature, quality, or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of the law." Mo.Rev.Stat. § 552.030.1 (1985).

sider his course of action. (Cir.Ct.Tr. at 94–95).

On April 29, 1986, the court provided petitioner with petitions to enter pleas of guilty. (Cir.Ct.Tr. at 97–98). The court again advised petitioner of the rights he would waive by entering the pleas and assured petitioner that he could change his mind at any time until the court accepted the guilty pleas. (Cir.Ct.Tr. at 98–102).

On May 9, 1986, the court held the change of plea hearing. The court fully informed petitioner of the various rights he was waiving by entering guilty pleas. (Cir.Ct.Tr. at 110–22). The court asked petitioner if he was entering the pleas voluntarily and explained this meant that the decision to plead guilty was his decision. (Cir.Ct.Tr. at 122–23, 148, 156). Petitioner answered affirmatively. (Cir.Ct.Tr. at 123, 148, 156). The court asked petitioner if he had received any threats, promises or other inducements to persuade him to enter the pleas and petitioner stated he had not. (Cir.Ct.Tr. at 123, 148–49, 156). The court asked petitioner to state the facts relating the crime, which he did. (Cir.Ct.Tr. at 124–28).

The court found that petitioner's pleas were made voluntarily, intelligently and with a full understanding of the charges and consequences of the pleas. (Cir.Ct.Tr. at 144, 153, 163). The court then accepted each guilty plea and ordered presentence investigation reports. (Cir.Ct.Tr. at 144, 153–54, 163–64).

The sentencing hearing was held on June 27, 1986. Petitioner again appeared *pro se*, with Mr. Duchardt available for consultation. (Cir.Ct.Tr. at 167–68). Petitioner signed "Waiver of Trial by Jury" and "Waiver of Counsel" forms and stated that he understood their contents. (Cir.Ct.Tr. at 179–83). The court gave petitioner one last opportunity to withdraw his pleas of guilty, but petitioner stated he wanted to continue with the sentencing. (Cir.Ct.Tr. at 184–88).

The State presented evidence of the crime through the police officer called to the scene, the coroner who performed the autopsy of Nancy Allen, an investigating police officer, and Nancy Allen's husband. (Cir.Ct.Tr. at 194–233). The State called Dr. Mandracchia, who testified that petitioner did not suffer from a mental disease or defect, as defined by Missouri law, at the time the crime was committed. (Cir.Ct.Tr. at 246). Dr. Logan testified that petitioner could have had a mental disease or defect at the time the crime was committed, but that the defect was not such that petitioner could not appreciate the nature, quality or wrongfulness of his conduct or conform his conduct to the requirements of the law.[4] (Cir.Ct.Tr. at 270).

Petitioner's only witness was Patrick Stevens, who asserted his Fifth Amendment right against self-incrimination and refused to answer petitioner's questions. (Cir.Ct.Tr. at 278–79, 287–89). During closing arguments, both the State and petitioner asked the court to impose the death penalty. (Cir.Ct.Tr. at 289–98). After finding that aggravating circumstances existed, the court sentenced petitioner to death. (Cir.Ct.Tr. at 300–02).

Consistent with his announced desire to be put to death, petitioner did not appeal the trial court's judgment and sentence. The Supreme Court of Missouri, however, requested the State Public Defender to enter the case as amicus curiae and brief and argue "any issue subject to review." *State v. Wilkins*, 736 S.W.2d 409, 411 (Mo. banc 1987).[5] Before the case was argued in the Supreme Court of Missouri, petitioner appeared in person and informed the court that he did not want the assistance of counsel in the proceedings before the court. *Id.* Counsel then argued the case, after which the court allowed petitioner to address the court. *Id.* Petitioner used the opportunity to contest statements made by the public defender concerning his competency. *Id.*

---

4. The State also called witnesses to testify about petitioner's juvenile history, however, these witnesses were cut short when the court sustained petitioner's relevancy objections. (Cir.Ct.Tr. at 233–45).

5. Section 565.035.1 of the Missouri Revised Statutes requires the Supreme Court of Missouri to review all sentences of death. Mo.Rev.Stat. § 565.035.1 (1983).

The court then stayed the proceedings to determine if petitioner was competent to waive his right to counsel on appeal. *Id.* The court ordered the State Department of Mental Health to determine petitioner's competence to waive his right to counsel. *Id.* Dr. S.D. Parwatikar performed the evaluation on behalf of the Department of Mental Health and concluded that petitioner was not competent to waive his right to counsel. (Rule 24.035 Transcript at 848–49). After Dr. Parwatikar filed his report and evaluation, the Supreme Court of Missouri appointed counsel for petitioner, ordered new briefs, and heard argument in the case again. *Wilkins,* 736 S.W.2d at 411. On September 15, 1987, the Supreme Court of Missouri affirmed the trial court's judgment and sentence. *Id.* at 417.

The Supreme Court of the United States granted certiorari in *Wilkins* and a companion case, *Stanford v. Kentucky,* to decide whether the Eighth Amendment precludes the death penalty for individuals who commit crimes at 16 or 17 years of age. *Wilkins v. Missouri,* 487 U.S. 1233, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988); *Stanford v. Kentucky,* 488 U.S. 887, 109 S.Ct. 217, 102 L.Ed.2d 208 (1988). The Court found that it did not and, on June 26, 1989, affirmed the judgment of the Supreme Court of Missouri. *Stanford v. Kentucky,* 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).

On June 30, 1988, petitioner moved pursuant to Rule 24.035 of the Supreme Court Rules to set aside his conviction and sentence. (Legal File at 1). The sentencing court appointed counsel for petitioner and held a hearing on the motion from May 22–26, and June 5, 1989. The testimony relevant to the issues addressed by this Court is described below.

Petitioner first called Dr. Dorothy Lewis, a psychiatrist, to testify. (R. 24 Tr. at 5–6).[6] Dr. Lewis testified that, at the request of the public defender's office, she performed a psychiatric evaluation of petitioner. (R. 24 Tr.

at 14–15). The evaluation consisted of a five-hour psychiatric interview of petitioner on August 25, 1988 and a review of petitioner's psychiatric records, juvenile history, and transcripts of the case. (R. 24 Tr. at 15–21). Dr. Lewis testified that, in her opinion, petitioner was not competent to stand trial and was not competent to proceed without the assistance of counsel at the time he entered his guilty plea and waived his right to counsel. (R. 24 Tr. at 22–23, 47–48, 74–75).

Dr. Lewis stated that, based on petitioner's auditory hallucinations, as documented in his psychiatric records, his illogical thought processes and his paranoid ideation, she believed petitioner was psychotic. (R. 24 Tr. at 23–27). She testified that petitioner was able to appear quite rational initially, but after approximately an hour of contact with petitioner, his psychotic condition began to evidence itself. (R. 24 Tr. at 24).

Dr. William O'Connor, a clinical psychologist, next testified on behalf of petitioner. (R. 24 Tr. at 139). Dr. O'Connor stated that he administered numerous standardized tests to petitioner on January 7, 25, and 31, 1985. (R. 24 Tr. at 143). The tests included the Halstead–Reitan neuropsychological battery of tests, a psychological battery[7] and the Luria–Nebraska neuropsychological battery. (R. 24 Tr. at 144). Based on the test results, Dr. O'Connor concluded that petitioner suffered from a schizoaffective disorder. (R. 24 Tr. at 154–56). Dr. O'Connor testified that, at the time petitioner entered his plea of guilty, he was not competent to stand trial or proceed without counsel. (R. 24 Tr. at 167). Dr. O'Connor stated that, in his opinion, petitioner suffered from a mental illness which severely impaired his ability to anticipate consequences and use judgment. (R. 24 Tr. at 174).

Dr. Jonathan Pincus, a professor of neurology and chairman of the Department of Neurology at Georgetown University School of Medicine, also testified on behalf of petitioner. (R. 24 Tr. at 309). Dr. Pincus testified

6. The Court will refer to the transcript of the Rule 24.035 hearing as "R. 24 Tr." The transcript itself is titled "Transcript of Rule 29.15 Hearing," however, Rule 24.035 of the Supreme Court Rules provides for postconviction relief

after a plea of guilty, whereas Rule 29.15 provides for relief after a trial.

7. The psychological battery of tests included a M.M.P.I. (R. 29 Tr. at 147).

that he performed a neurological history examination of petitioner on August 25, 1988 and reviewed petitioner's juvenile records. (R. 24 Tr. at 319–20, 323). An E.E.G., M.R.I. scan and SPECT scan were also performed. (R. 24 Tr. at 324). Dr. Pincus stated that, in his opinion, petitioner was not competent to proceed or to waive his right to counsel at the time of the guilty plea. (R. 24 Tr. at 359–61).

Petitioner next called Dr. Logan to testify at the hearing. (R. 24 Tr. at 450). Dr. Logan stated that he had not been asked during the initial proceedings to render an opinion concerning petitioner's competency to waive his right to counsel. (R. 24 Tr. at 469–70). Dr. Logan believed petitioner suffered from psychiatric difficulties which significantly impacted his ability to make decisions in the case. (R. 24 Tr. at 471). Dr. Logan testified that petitioner possessed cognitive ability, but that he did not use his ability when making decisions. (R. 24 Tr. at 472). Dr. Logan believed petitioner made decisions without actually considering the consequences of the decisions. (R. 24 Tr. at 472). Therefore, Dr. Logan believed, petitioner was not competent to proceed without the assistance of counsel. (R. 24 Tr. at 471–72).

Petitioner then recalled Dr. O'Connor. (R. 24 Tr. at 666). Dr. O'Connor explained that, at petitioner's counsel's request, he had obtained and reviewed petitioner's results from the M.M.P.I. administered by Dr. Mandracchia in December of 1985. (R. 24 Tr. at 666–67). Dr. O'Connor stated that he had rescored the test results, which provided him with a psychological profile of petitioner at the time the test was administered. (R. 24 Tr. at 668).

Dr. O'Connor testified that Dr. Mandracchia's interpretation of the test was not consistent with the standard texts on M.M.P.I. interpretation. (R. 24 Tr. at 668). Dr. O'Connor believed the M.M.P.I. results demonstrated that petitioner was not competent to make a knowing, intelligent, voluntary and rational choice between the alternatives available to him at the time he pled guilty.

(R. 24 Tr. at 688). Petitioner rested after Dr. O'Connor's testimony. (R. 24 Tr. at 735).

The State first called Fred Duchardt, petitioner's appointed counsel during the certification hearing in juvenile court and the initial competency hearings. (R. 24 Tr. at 611–12). After Mr. Duchardt's memory was refreshed with the juvenile court record, he testified that he requested a mental evaluation of petitioner and that the juvenile court denied the request.[8] (R. 24 Tr. at 626–28). Mr. Duchardt stated that he has always believed that petitioner was not competent to proceed, to waive his right to counsel, or to plead guilty. (R. 24 Tr. at 637, 655). Mr. Duchardt testified that, in his opinion, petitioner's decisions to waive his right to counsel, plead guilty and seek the death penalty were not rational, voluntary, intelligent decisions made after an intelligent weighing of the alternatives. (R. 24 Tr. at 642).

The State next called Dr. Mandracchia, who examined petitioner in November of 1985 to determine petitioner's competency to stand trial. (R. 24 Tr. at 736). Dr. Mandracchia was again asked if he believed petitioner was competent to proceed. (R. 24 Tr. at 741). Dr. Mandracchia responded that his examination had revealed no evidence of a mental disease or defect that excluded petitioner from proceeding. (R. 24 Tr. at 741).

Dr. Mandracchia was also asked, for the first time, if he could render an opinion as to whether petitioner was competent to waive his right to counsel. (R. 24 Tr. at 812). Dr. Mandracchia responded that he did not assess petitioner's ability to waive counsel and could not render an opinion on the subject. (R. 24 Tr. at 812–13). The State rested after Dr. Mandracchia's testimony. (R. 24 Tr. at 817).

The court convened to hear argument in the case the following morning. (R. 24 Tr. at 818). The State, however, moved to continue the case for one week. (R. 24 Tr. at 818–19). The State informed the court that it was surprised by Dr. Mandracchia's response concerning petitioner's competency to waive his right to counsel. (R. 24 Tr. at 819). The

---

8. On direct examination, Mr. Duchardt had testified that he did not request a psychiatric evaluation of petitioner in the juvenile court. (R. 29 Tr. at 618).

State requested that Dr. Mandracchia be permitted to re-examine petitioner and moved to reopen its case to hear Dr. Mandracchia's testimony on the issue. (R. 24 Tr. at 819).

Petitioner's counsel strenuously objected to the State's requests on several grounds. (R. 24 Tr. at 820–23, 828–31, 832–34, 835–38, 839–40). The court granted the State's motions and ordered Dr. Mandracchia to conduct a psychological evaluation of petitioner. (R. 24 Tr. at 839).

The court reconvened the hearing on June 5, 1989. Dr. Mandracchia had not yet arrived to testify, so petitioner called Dr. Parwatikar, his rebuttal witness, first. (R. 24 Tr. at 843–44). Dr. Parwatikar had performed the evaluation of petitioner ordered by the Supreme Court of Missouri in October of 1986 to determine if petitioner was competent to waive his right to counsel on appeal. (R. 24 Tr. at 846–48). Dr. Parwatikar testified that his evaluation of petitioner consisted of a two and one-half hour interview and a review of the case transcripts, psychiatric reports and petitioner's records. (R. 24 Tr. at 847–48). Dr. Parwatikar stated he concluded, and informed the Supreme Court of Missouri, that petitioner was not competent to waive his right to counsel. (R. 24 Tr. at 848–49).

Dr. Parwatikar believed petitioner had the cognitive ability to understand the proceedings against him, but that he suffered from a mental disorder which rendered him incapable of deciding to waive his right to counsel through appropriate reasoning. (R. 24 Tr. at 850–52). Dr. Parwatikar also testified that petitioner was not competent to waive his right to counsel in early 1986, when he was initially allowed to waive counsel and plead guilty. (R. 24 Tr. at 857).

The State then recalled Dr. Mandracchia. (R. 24 Tr. at 890). Dr. Mandracchia testified that, pursuant to the court's order, he performed another psychological evaluation of petitioner. (R. 24 Tr. at 891–92). Dr. Mandracchia testified he had interviewed petitioner for seven to eight hours over a two-day period and reviewed the psychiatric reports and petitioner's records. (R. 24 Tr. at 891–92). Dr. Mandracchia stated that, in his opinion, petitioner waived his right to counsel knowingly, but not intelligently or voluntarily. (R. 24 Tr. at 893).

Dr. Mandracchia believed petitioner was able to waive his right to counsel knowingly because he understood who his counsel was and that the waiver meant he chose not to have counsel assist him. (R. 24 Tr. at 893–94). Dr. Mandracchia believed petitioner was not able to waive his right to counsel voluntarily because he was coerced, in an interpsychic or intrapersonal sense, by an irrational, overriding fear of long-term incarceration. (R. 24 Tr. at 894–96, 903). Dr. Mandracchia believed petitioner was not able to waive his right to counsel intelligently because petitioner simply did not consider any option other than death. (R. 24 Tr. at 897). Dr. Mandracchia stated that petitioner did not engage in a true decision-making process, but that he made the decision with the perspective that there were no alternatives. (R. 24 Tr. at 900). Dr. Mandracchia believed that once petitioner began to seek the death penalty, all other decisions, including the decision to waive his right to counsel, were simply methods to achieve his goal of being sentenced to death. (R. 24 Tr. at 898–99).

Dr. Mandracchia provided the court with a written report of his findings. (R. 24 Tr. at 901). In addition to his findings concerning petitioner's waiver of his right to counsel, the report stated that petitioner's decisions to plead guilty and to waive the right to offer evidence in mitigation of sentence were made knowingly, but not voluntarily or intelligently. (State's Ex. 33). Therefore, the report stated, petitioner was not competent to make these decisions. (State's Ex. 33).

The State rested after Dr. Mandracchia's testimony. (R. 24 Tr. at 901). The court then heard argument from counsel and ordered the parties to submit proposed findings of fact and conclusions of law. (R. 24 Tr. at 907–84). On July 26, 1989, the court denied petitioner's motion. (Legal File at 113). The court found the psychiatrists' and psychologists' testimony "unpersuasive" and found that petitioner "knowingly, voluntarily,

intelligently, and competently waived his right to counsel." (Legal File at 92–93).

Petitioner filed an appeal in the Missouri Court of Appeals, Western District. (Legal File at 115). After the appeal was transferred to the Supreme Court of Missouri, the court affirmed the denial. *Wilkins v. State,* 802 S.W.2d 491 (Mo. banc 1991). On the issue of the sentencing court's finding that petitioner was competent to waive his right to counsel, the court held that the sentencing "court may reject any witnesses' testimony though no contrary evidence is offered." *Id.* at 501. Petitioner's writ of certiorari was denied by the Supreme Court of the United States. *Wilkins v. Missouri,* 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991).

## II. Analysis

Petitioner contends he was denied his right to counsel under the Sixth and Fourteenth Amendments because he was not competent to waive the right and because the waiver was not knowingly, voluntarily or intelligently made.[9] The State argues that the sentencing court's finding that petitioner's waiver of his right to counsel was made competently, intelligently, knowingly and voluntarily is well-supported and should not be disturbed by this Court.

■ On habeas review of a state conviction, this Court accords a presumption of correctness to state court findings of fact. 28 U.S.C. § 2254(d). Section 2254(d) provides eight exceptions to this presumption. One of the exceptions exists if this Court concludes that a factual determination is not "fairly supported by the record." 28 U.S.C. § 2254(d)(8).

■ Whether a defendant has voluntarily waived rights guaranteed by the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of Section 2254(d). *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983). However, underlying questions of fact relating to the legal issue are questions of fact for purposes of Section 2254(d). *Id.* at 431–32, 103 S.Ct. at 849–50; *see also Demosthenes v. Baal,* 495

U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (state court's finding regarding a defendant's competency is entitled to Section 2254(d) presumption). Accordingly, the issue before this Court is whether the state court's findings with regard to petitioner's waiver of his right to counsel are fairly supported by the record.

■ The Sixth and Fourteenth Amendments guarantee a criminal defendant in a state proceeding the right to counsel. *Gideon v. Wainwright,* 372 U.S. 335, 342–44, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963). In determining whether there has been a valid waiver of right to counsel, courts must "indulge every reasonable presumption against waiver." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (citing *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937)). "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." *Johnson,* 304 U.S. at 465, 58 S.Ct. at 1023. "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023.

■ In *Godinez v. Moran,* —— U.S. ——, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court of the United States announced the competency standard for waiving the right to counsel and pleading guilty.

---

**9.** Petitioner raises numerous other claims, however, because the Court holds that petitioner's right to counsel was violated, the other claims will not be addressed.

The Court granted certiorari on the issue of whether the competency standard for waiving these rights was higher than the competency standard for standing trial. *Id.* at —————, 113 S.Ct. at 2684–85. The Court stated that the standard for competence to stand trial is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* at ———, 113 S.Ct. at 2685 (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). The Court held that the standard for competence to waive the right to counsel or plead guilty is not higher. *Godinez,* ——— U.S. at ———, 113 S.Ct. at 2686. Thus, a defendant who is competent to stand trial is competent to waive the right to counsel and plead guilty.

■ "A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Godinez,* ——— U.S. at ———, 113 S.Ct. at 2687 (citing *Parke v. Raley,* ——— U.S. ———, ———, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (The standard is whether the waiver represents a voluntary and intelligent choice among the alternative courses of action open to the defendant), and *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (accused must "knowingly and intelligently" forego benefits of right to counsel)).

The *Godinez* Court held that, "[i]n this sense there *is* a 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of *competence.*" *Godinez,* ——— U.S. at ———, 113 S.Ct. at 2687 (emphasis in original). The Court explained that the "focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at ——— n. 12, 113 S.Ct. at 2687 n. 12 (emphasis in original) (citations omitted).

■ Petitioner first argues that he was not competent to waive his right to counsel. The State contends that the record supports the sentencing court's determination that petitioner was competent to stand trial. Thus, the State argues, under *Godinez,* petitioner was competent to waive his right to counsel. This Court agrees. Dr. Mandracchia's testimony on the issue of competency to stand trial appears to constitute "fair support" for the court's finding that petitioner was competent to stand trial. Accordingly, the record fairly supports the sentencing court's finding that petitioner was competent to waive his right to counsel as well.

■ Petitioner next argues that the sentencing court's finding that he knowingly, intelligently and voluntarily waived his right to counsel is erroneous. The State contends the record supports the court's findings on this issue.

After an exhaustive review of the more than fifteen hundred pages of transcript of the state court proceedings, this Court has reached the inescapable conclusion that the sentencing court's finding that petitioner intelligently and voluntarily waived his right to counsel is not fairly supported by the record. Rather, all the evidence on the record contradicts the finding.

The Court first considers the conclusions of Dr. Mandracchia, the State's primary witness and the only psychiatrist or psychologist to examine petitioner prior to and after the relevant period of time. After his extensive reevaluation of petitioner, Dr. Mandracchia concluded that petitioner could not intelligently or voluntarily waive his right to counsel.[10] Dr. Mandracchia believed petitioner

---

**10.** Dr. Mandracchia also stated petitioner knowingly waived his right to counsel, but he based this opinion on the fact that petitioner knew who his counsel was and that the waiver meant he chose not to have counsel assist him. This level of awareness obviously does not satisfy the

**1512**

was not able to waive the right voluntarily because he was coerced, in an interpsychic or intrapersonal sense, by an irrational, over-riding fear of long-term incarceration. Dr. Mandracchia believed petitioner was unable to waive his right to counsel intelligently because petitioner simply did not consider any option other than death. Dr. Mandracchia stated that petitioner did not engage in a true decision-making process, but that he made the decision with the perspective that there were no alternatives.

Dr. Logan's conclusions were very similar to Dr. Mandracchia's. Dr. Logan testified that petitioner possessed cognitive ability, but, due to his psychiatric condition, he made decisions without truly considering the consequences. Dr. Parwatikar also believed petitioner possessed the cognitive ability to understand the proceedings, but concluded that petitioner's mental disorder rendered him incapable of making the decision to waive his right to counsel through appropriate reasoning.

Dr. O'Connor testified that petitioner suffered from a mental illness which severely impaired his ability to anticipate consequences and use judgment. After reviewing the results of the M.M.P.I. originally administered to petitioner by Dr. Mandracchia, Dr. O'Connor offered a more specific opinion. Dr. O'Connor testified that petitioner was not able to make a knowing, intelligent, voluntary and rational choice between the alternatives available to him at the time he pled guilty.[11]

Thus, every single psychiatrist and psychologist answering the question, including

the two state doctors examining petitioner pursuant to orders from state courts, concluded that petitioner could not intelligently or voluntarily waive his right to counsel. The State offered absolutely no evidence that petitioner was capable of intelligently and voluntarily waiving his right to counsel. The State's only evidence in the Rule 24.035 hearing consisted of two witnesses who, on this issue, testified to the exact opposite of that expected by the State.[12]

The State contends that the record supports the sentencing court's finding because the sentencing court thoroughly advised petitioner of his constitutional rights and the dangers of waiving them. The trial court did fully inform petitioner of the various rights he was waiving and disadvantages of waiving those rights. However, the knowingly and voluntarily prong of the *Godinez* standard clearly requires more than merely exposing a defendant to information—it requires that "the defendant actually *does* understand the significance and consequences of a particular decision." *Godinez*, —— U.S. at —— n. 12, 113 S.Ct. at 2687 n. 12. Every psychiatrist and psychologist that offered testimony on the issue concluded that petitioner suffered from a mental disorder that prevented him from possessing such an understanding. In light of the undisputed psychiatric opinion, the fact that the sentencing court informed petitioner of his rights is of little consequence.

■ The State argues that the sentencing court's otherwise sufficient colloquy with petitioner concerning his rights cannot be rendered deficient simply because petitioner suffered from a mental disorder.[13] In essence, the State contends that the petitioner's mental disorder is not relevant to wheth-

"knowingly" standard described by the *Godinez* Court as requiring that the defendant actually understands the significance and consequences of his decisions. Dr. Mandracchia's use of "intelligently" does appear to be consistent with the constitutional standard.

**11.** Dr. Lewis and Dr. Pincus both testified that petitioner suffered from a mental disorder rendering him incompetent to stand trial or waive his right to counsel, but were not specifically asked about petitioner's ability to knowingly, intelligently or voluntarily make the decision to waive his rights.

**12.** The State apparently expected Fred Duchardt to testify that he did not ask the juvenile court for

a psychiatric evaluation to determine competency because he did not feel such an evaluation was necessary. (R. 24 Tr. at 618). The State also expected Dr. Mandracchia to testify that petitioner could intelligently and voluntarily waive his right to counsel. (R. 24 Tr. at 819).

**13.** The State also argues that, if a mental disorder is relevant to the issue, this is a new rule under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Court disagrees. The *Godinez* decision did not impose or alter the requirement that a defendant must knowingly and voluntarily waive constitutional rights.

er he knowingly and voluntarily waived his rights as long as the court fully informed petitioner. This Court disagrees. Clearly, a defendant's mental condition is relevant to his ability to truly knowingly and voluntarily waive his constitutional rights. This proposition is supported by common sense as well as the extensive psychiatric testimony in this case.

Two Circuit Court of Appeals' cases decided since *Godinez* recognize that a mental condition is relevant to whether the defendant knowingly and voluntarily waives constitutional rights. In *United States v. Cash,* 47 F.3d 1083 (11th Cir.1995), the issue before the Eleventh Circuit was whether the defendant's waiver of his right to counsel had been knowing, voluntary and intelligent. *Id.* at 1088. The trial court had found the defendant competent to stand trial and allowed him to waive his right to counsel. *Id.* at 1086–87. On appeal of his conviction, the defendant did not argue that he was not competent to waive his right to counsel, but argued that the waiver of the right was not knowing, voluntary and intelligent. *Id.* at 1089 n. 3. The Eleventh Circuit concluded that, in light of the defendant's mental disorder, it was questionable whether the defendant actually possessed the information necessary to make a knowing, voluntary and intelligent waiver.[14] *Id.* at 1090. *See also Weisberg v. State of Minnesota,* 29 F.2d 1271, 1278 (8th Cir.1994) (letter from psychologist, while found to be ambivalent and thus unpersuasive, was relevant to whether defendant knowingly and voluntarily entered guilty plea). The State's assertion that petitioner's mental impairment is not relevant to whether he knowingly, intelligently and voluntarily waived his right to counsel is without merit.

### III. Conclusion

This Court holds that the state court's finding that petitioner intelligently and vol-

untarily waived his right to counsel is not fairly supported by the record. Accordingly, the finding is not entitled to the presumption of correctness under Section 2254(d).

The Court holds that petitioner was denied his right to counsel guaranteed by the Sixth and Fourteenth Amendments. Petitioner is therefore in custody in violation of the Constitution of the United States. Petitioner's petition for writ of habeas corpus will be conditionally granted.

It is hereby

ORDERED that Heath A. Wilkins' First Amended Petition for Writ of Habeas Corpus is conditionally granted. This conditional issuance of the writ shall become unconditional and permanent unless the State of Missouri allows petitioner to withdraw his plea of guilty and commences proceedings to afford petitioner a trial within sixty days of the date of this Order.

---

**14.** The court noted that, had the trial court engaged the defendant in a more searching colloquy, the government might have met its burden of showing that the defendant knowingly, voluntarily and intelligently waived his right to counsel. *Cash,* 47 F.3d at 1090. A more searching discussion could remedy the error in *Cash* because the defendant's mental disorder was such that it caused him to overestimate and overstate his abilities. *Id.* In the case at bar, petitioner's mental disorder apparently prevents him from understanding the significance and consequences of his decisions. Thus, an extensive discussion with petitioner could not satisfy the requirement. This Court cites *Cash* only for the proposition that a defendant's mental disorder is relevant in determining whether he is able to knowingly, intelligently and voluntarily waive his right to counsel.