**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Don Edward CASH, Defendant–Appellant.**

**No. 93–7100.**

United States Court of Appeals, Eleventh Circuit.

March 16, 1995.

J. Stephen Salter, Birmingham, AL, for appellant.

Robert O. Posey, Asst. U.S. Atty., Birmingham, AL, for appellee.

Before HATCHETT and COX, Circuit Judges, and JOHNSON, Senior Circuit Judge.

JOHNSON, Senior Circuit Judge:

In this appeal from the Northern District of Alabama, Donald Edward Cash ("Appellant") seeks reversal of his conviction and a new trial.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

This case arises out of the eviction of Appellant's uncle, Dave Jackson, from a house which the government sought to clear in connection with the Village Creek Flood Control Project. Because negotiations with Jackson and Appellant over the purchase price for the house were fruitless, the Corps of Engineers filed suit for condemnation. The parties settled the case, and Jackson agreed to surrender the property to the government within ninety days. The settlement agreement also provided that if Jackson bought a comparable replacement house for more than the cost of his old house, he would be eligible for a relocation payment of the difference. Although Jackson bought a replacement house for less than the government paid him for his old house, he refused to vacate the old house, demanding a replacement payment.

From November 1992 to January 1993, Appellant made several statements, public and private, in which he threatened to kill the deputy U.S. marshals if they tried to remove him from his uncle's house. An arrest warrant for obstruction of justice was issued against Appellant in January 1993. When the marshals arrived at the house, they offered Appellant a replacement payment in settlement of the dispute, but he rejected it. A deputy U.S. marshal then sprayed Appellant in the face with a chemical agent similar to "Mace." Appellant pulled a cocked and loaded 45-caliber semiautomatic pistol from his waistband. A struggle ensued, during which Appellant fired three

shots. He was arrested. Appellant and Jackson were removed from the property, and the house was demolished.

### B. *Procedural History*

In January 1993, an indictment charged Appellant with two counts of attempted murder of deputy U.S. marshals, in violation of 18 U.S.C.A. § 1114 (West Supp.1994), two counts of forcibly resisting deputy U.S. marshals, in violation of 18 U.S.C.A. § 111 (West Supp.1994), one count of use of a firearm to commit crimes of violence, in violation of 18 U.S.C.A. § 924(c) (West Supp.1994), and three counts of obstruction of justice, in violation of 18 U.S.C.A. § 1503 (West 1984). At his arraignment in February 1993, in the presence of his appointed counsel, Appellant indicated orally that he wished to represent himself.

Later in February 1993, the magistrate judge ordered an examination of Appellant by psychologists at the Taylor–Hardin Secure Medical Facility. In March 1993, the psychologists reported that Appellant was not competent to stand trial and recommended additional evaluation and treatment of Appellant in an in-patient setting. On the basis of this report, the magistrate judge found that Appellant was not competent to waive counsel and denied his oral motion to represent himself. The district court held a competency hearing and found, based primarily on the Taylor–Hardin report, that Appellant was not competent to stand trial. The court committed Appellant to the custody of the Attorney General for evaluation and treatment pursuant to 18 U.S.C.A. § 4241(d) (West 1985).

In May 1993, Appellant's appointed counsel moved to withdraw. The motion was granted in August 1993, and appointed counsel was replaced by retained counsel.

Also in August 1993, an evaluation of Appellant prepared by the staff at the Mental Health Division of the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"), was filed with the district court. Based on evaluation of Appellant over a period of approximately two months, the report from the staff at FCI Butner concluded that Appellant was competent to stand trial. The

district court held a competency hearing, found that Appellant was competent to stand trial, and set trial for September 13, 1993.

On August 31, 1993, Appellant's retained counsel filed a motion to continue the trial, which motion was denied on September 1, 1993. On September 13, 1993, the date of trial, Appellant again moved for a continuance and again requested to represent himself. After addressing Appellant personally regarding his right to represent himself, the court granted Appellant's request to proceed *pro se.* Specifically, after the court was informed that Appellant had requested the withdrawal of his retained counsel, the court held the following colloquy with Appellant:

THE COURT: Mr. Cash, is that correct?

THE DEFENDANT: Yes, sir. Now that I've been found competent to stand trial—and that was the reason that you sent me down to Butner, so that I could—so they could evaluate me to see if I could represent myself—now that I am, and my lawyers and I cannot agree upon the strategy by which to defend me, I'd like to be given the right to represent myself.

THE COURT: Well, let me correct one thing that you said. We didn't send you to Butner to find out if you were competent to represent yourself, we sent you to Butner to find out if you were competent to stand trial at all.

THE DEFENDANT: Yes, sir.

THE COURT: The situation that you have here, you have a right under the Sixth Amendment to counsel of your choice, including yourself.

THE DEFENDANT: Yes, sir.

THE COURT: And no one can force an attorney on you.

THE DEFENDANT: Yes, sir.

THE COURT: But most individuals who attempt to represent themselves—

THE DEFENDANT: Yes, sir.

THE COURT: —don't do a very good job of it, because most laymen are not competent to represent themselves.

THE DEFENDANT: Yes, sir.

THE COURT: And ordinarily, it's a very foolish thing for a defendant in a criminal matter to attempt to represent himself. We have seen situations where the defendant is himself a lawyer who chooses to represent himself, and it didn't turn out very well for him.

That is a choice that you have. I can only permit you to exercise that choice if you, first of all, recognize your right to have counsel, to have constitutionally effective counsel; that you recognize the dangers; the seriousness of the choice to represent yourself; that you make that choice to represent yourself voluntarily, that is, without any coercion or pressure—or undue pressure, at least.

Now, first of all, you tell me you want to represent yourself. Tell me why you want to represent yourself, sir.

THE DEFENDANT: Based on the strategy that my lawyers and I have discussed, I don't feel that the strategy that they want to use would be beneficial to me in this particular case. And I feel that there are a lot of things that will be left unsaid if they go—they use their strategy, and the whole truth of the entire matter will be covered up.

THE COURT: Well, let me tell you in that regard, I suspect I know what you're talking about.

THE DEFENDANT: I believe you do, sir.

THE COURT: I'm not going to ask you what your strategies are, you don't have to tell me—at least at this stage. But the lawsuit—it's a criminal matter, but it's a lawsuit—is about a particular incident that happened on a particular occasion, involving particular people. It may have been the result of, or part of a series of events involving the lawsuit which Judge Lynne handled which involved the condemnation or whatever the proceeding was, in which Mr. Jackson's home was purchased from him against his will.

You—and Mr. Jackson, too—apparently felt very strongly about that. But the legality of that proceeding, whether it's right, wrong, or indifferent; whether Judge Lynne was correct; whether you were treated fairly or Mr. Jackson was treated fairly, those are not matters which aren't [sic] going to be heard in this lawsuit.

What we are going to hear in this lawsuit is whether you committed the acts which are charged against you in the indictment. And that's all we're going to hear.

\* \* \* \* \* \*

THE COURT: ... Now, whether you defend yourself or whether these gentlemen defend you, we're going to try the lawsuit which is charged in the indictment. We are not going to try what Judge Lynne did. We are not going to get into that any more than is necessary to placing into context what is happening here, and that's going to be very brief.

· · · · ·

[The court then denied Appellant's motion for a continuance]

\* \* \* \* \* \*

THE COURT: ... What is it you want to do, Mr. Cash? Having heard those things and me having told you how the situation is going to be at trial, do you still want to try to represent yourself?

THE DEFENDANT: I would pray that you please give me the right to represent myself, sir.

THE COURT: I don't have to give you that right, you have that right. It's the Constitution of the United States that gives you that right.

Appellant represented himself at trial and was convicted as to all counts except one count of obstruction of justice. He was sentenced to 211 months' imprisonment. The issue before us is whether the district court erred by granting Appellant's request to represent himself.[1]

1. Appellant also contends that the district court abused its discretion by limiting the scope of his cross-examination of government witnesses and that the district court abused its discretion in refusing to grant his request for a continuance of the trial. However, because we vacate Appellant's conviction based on the waiver of counsel issue, we decline to decide these other issues.

## II. DISCUSSION

A defendant in a criminal trial has a constitutional right to proceed without counsel when he knowingly, voluntarily, and intelligently elects to do so. *Faretta v. California,* 422 U.S. 806, 833–36, 95 S.Ct. 2525, 2540–42, 45 L.Ed.2d 562 (1975). Whether a waiver of counsel is knowing and intelligent is a mixed question of law and fact which we review *de novo. Greene v. United States,* 880 F.2d 1299, 1303 (11th Cir.1989), *cert. denied,* 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990). On direct appeal, the government bears the burden of proving the validity of the waiver. *Id.* at 1303, n. 6.

Before being allowed to waive the benefit of counsel, an accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his decision is made with open eyes.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citation omitted). The ideal method of assuring that a waiver is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation. *Strozier v. Newsome,* 926 F.2d 1100, 1104 (11th Cir.) (*"Strozier II"*), *cert. denied,* 502 U.S. 930, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991). While a pretrial hearing is preferred, it is not required. *Id.* at 1105; *see also Greene,* 880 F.2d at 1303 (a hearing is not essential, but "extremely beneficial"). The absence of a hearing will not give rise to a violation of the Sixth Amendment right to counsel in the "rare cases [where] the record may support a waiver." *United States v. Fant,* 890 F.2d 408, 409 (11th Cir.1989) (per curiam), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1498, 108 L.Ed.2d 633 (1990) (quoting *Strozier v. Newsome,* 871 F.2d 995, 997 (11th Cir. 1989) (*"Strozier I"*).

To satisfy itself as to the validity of a waiver of the right to counsel, the trial court "should do more than ask *pro forma* questions; [it] should explain the difficulties inherent in any criminal trial, including the importance of evidentiary rules." *Strozier I,* 871 F.2d at 997 n. 4. General questions are insufficient; the court must inform the defendant of charges, included offenses and possible range of punishment. *Sanchez v. Mondragon,* 858 F.2d 1462, 1467 (10th Cir.1988), *overruled on other grounds* by *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990) (cited with approval in *Strozier II,* 926 F.2d at 1104). The closer to trial an accused's waiver of the right to counsel is, "the more rigorous, searching and formal the questioning of the trial judge should be." *Strozier II,* 926 F.2d at 1105.

In this case, the district court granted Appellant's request to proceed *pro se* on the *very day* of the trial. The court did not question Appellant regarding his knowledge of the charges and potential penalties he faced. Nor did it inquire into Appellant's knowledge of courtroom procedures or evidentiary rules. In short, although the district court generally discouraged self-representation and made some inquiry into Appellant's reasons for wishing to represent himself, the colloquy it conducted was not of the level of specificity or depth recommended by Eleventh Circuit precedent. *See Stano v. Dugger,* 921 F.2d 1125, 1148 (11th Cir.) (en banc) (more extensive colloquy is required to waive counsel than is required for acceptance of a guilty plea), *cert. denied sub nom. Stano v. Singletary,* 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991).

However, the ultimate test for whether there has been a valid waiver of the right to counsel "is not the trial court's express advice, but rather the defendant's understanding." *Fant,* 890 F.2d at 409. In *Fitzpatrick v. Wainwright,* this Court enumerated the factors we consider when determining whether a record establishes a knowing, voluntary, and intelligent waiver. 800 F.2d 1057, 1065–67 (11th Cir.1986). They are: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the

defendant; (7) any mistreatment or coercion of defendant; and (8) whether the defendant was trying to manipulate the events of the trial. *Id.* All factors need not point in the same direction. *See Stano,* 921 F.2d at 1145. We discuss each factor in turn.[2]

First, Appellant, a self-styled "Reverend," was 36 years old at the time of trial. He had a degree in business administration. He claimed to have legal training resulting from "self-taught study and research." He claimed to have worked as a self-employed legal consultant for seven years, earning approximately $30,000 a year. The physical examination of Appellant at FCI Butner revealed essentially normal findings. On the basis of a battery of mental status examinations and behavioral observations, the staff at FCI Butner found that Appellant was competent to stand trial. However, the FCI Butner staff also diagnosed Appellant with:

Narcissistic Personality Disorder as evidenced by his grandiose sense of self-importance and entitlement and lack of empathy. He is preoccupied with unlimited success and power ... He reacts to any criticism with anger, rage and shame and states that his problems are unique and can only be understood by special people. In addition, his extremely self-centered views make communication with others difficult. He accepts only his perceptions as accurate and thus has trouble maintaining a normal flow to conversations.

Second, Appellant had contact with an appointed lawyer and two retained lawyers prior to trial. Such contact was, however, limited due to the fact that he was at FCI Butner being evaluated and treated for much of the period preceding trial.

Third, the evaluation from FCI Butner reported that Appellant stated that he understood his case, the charges against him, and the sentence he might face.

Fourth, the report from FCI Butner stated that Appellant "demonstrated knowledge of courtroom procedure, the roles of the participants, the types of pleas he could make and appropriate courtroom behavior." The report added, "Mr. Cash has a good level of knowledge about courtroom procedures due to his previous work as a legal consultant." Appellant also reported having several cases "currently in litigation" and stated he had "taken people to court" six or seven times since the early 1980s over the violation of his constitutional rights.

Fifth, Appellant had no prior experience in criminal trials.

Sixth, the district court asked that one of Appellant's retained lawyers remain available in the courtroom "to consult with Mr. Cash or to take over his defense if he changes his mind or needs to talk to you." The lawyer who stayed rendered no consultation, advice, or aid to Appellant during the trial.

Seventh and eighth, Appellant makes no allegation of mistreatment or coercion, and there is no indication that Appellant waived counsel in order to manipulate the proceedings.

▮ Whether there has been an adequate waiver of the constitutional right to counsel depends upon the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The balance of the *Fitzpatrick* factors in this case is close. However, considering the inadequacy of the district court's colloquy with Appellant, we believe that the findings of Appellant's mental problems tip the balance in favor of finding that Appellant's waiver of counsel was not knowing, voluntary and intelligent.[3]

---

2. Often, the absence of a probing colloquy between the defendant and the district court will leave the record on appeal devoid of any basis for assessing some of the *Fitzpatrick* factors. *See, e.g., Fant,* 890 F.2d at 410; *Greene,* 880 F.2d at 1304. In this case, by contrast, due to the presence of the FCI Butner report as part of the record on appeal, we are able to address most of the *Fitzpatrick* factors.

3. Competency to waive the right to counsel is judged by the same standard as competency to stand trial. *Godinez v. Moran,* —— U.S. ——, ——–——, 113 S.Ct. 2680, 2686–87, 125 L.Ed.2d 321 (1993). Appellant does not contest that he was *competent* to waive his right to counsel. However, in addition to being competent to waive counsel, a defendant must make a voluntary and intelligent waiver of the right to coun-

The personality disorder with which Appellant was diagnosed causes him to overestimate and overstate his abilities. This renders questionable Appellant's claims about his level of legal and trial expertise and about his level of understanding of the charges and penalties he faced. Likewise, it renders questionable Appellant's decision to represent himself in the face of the district court's mere general admonitions that such a course was unwise. As a result, we are unable to ascertain whether Appellant possessed the information necessary to make a knowing, voluntary, and intelligent waiver. Had the district court personally engaged Appellant in a discussion as to some of the specific pitfalls he was likely to encounter in representing himself and thereby assured itself that, despite Appellant's tendency to give himself undue credit, Appellant understood the ramifications of his decision, the questionable nature of Appellant's self-assessments might have been dispelled. Because no such searching colloquy occurred, we conclude that the government has failed to carry its burden of showing that Appellant knowingly, voluntarily and intelligently waived his right to counsel.[4] Accordingly, Appellant's conviction is VACATED and the case REMANDED.[5]

---

sel. *Id.* Whereas "[t]he focus of the competency inquiry is the defendant's mental capacity ... whether he has the ability to understand the proceedings," the "'knowing and voluntary' inquiry" aims at determining "whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at —— n. 12, 113 S.Ct. at 2687 n. 12.

4. Moreover, we note that although the FCI Butner report—which contained much of the information necessary to analyze Appellant's waiver under the *Fitzpatrick* factors—was before the district court, there is no indication in the record that the district court specifically considered the

---

*Fitzpatrick* factors at all in deciding whether to accept Appellant's waiver of counsel. *See Strozier I*, 871 F.2d at 998 ("the district court should specifically consider the factors enumerated in *Fitzpatrick* to determine whether the defendant was actually aware of the dangers of proceeding *pro se*.").

5. Because a trial court's acceptance of an invalid waiver of the Sixth Amendment right to counsel is not subject to harmless error analysis, *Fant*, 890 F.2d at 410, we do not inquire into whether a different result would have obtained had Appellant been represented by counsel at trial.