[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-14853
Non-Argument Calendar
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 19, 2005
THOMAS  K. KAHN
CLERK

D.C. Docket No. 90-00126-CR-BAE-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRED CRENSHAW, III,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Georgia

_____

**(July 19, 2005)**

Before CARNES, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Fred Crenshaw, III, appeals through counsel the district court's revocation of his supervised release, following the court's grant of his oral motion to proceed without his appointed counsel during his final revocation hearing.[1] Crenshaw argues on appeal that the court plainly erred in either (1) granting Crenshaw's oral motion to proceed without his appointed counsel, or (2) allowing him to proceed pro se without first advising him on the "dangers and disadvantages of self-representation," pursuant to Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). For the reasons set forth more fully below, we affirm the district court's revocation of Crenshaw's supervised release.

In 1992, Crenshaw was resentenced to concurrent sentences of 160 months' imprisonment, to be followed by 3 years' supervised release, for committing aggravated sexual assault, in violation of 18 U.S.C. § 2241(a), and aiding and abetting, in violation of 18 U.S.C. § 2.[2] Crenshaw's conditions of release included that he (1) not commit another federal, state, or local crime; (2) answer truthfully

---

[1] After Crenshaw's final revocation hearing, the district court relieved Crenshaw's appointed counsel of any further representation. However, on Crenshaw's motion, we appointed new counsel to represent him on appeal.

[2] We reversed Crenshaw's original conviction, based on an erroneous evidentiary ruling by the trial court, and remanded the case for a new trial. See United States v. Hines, 955 F.2d 1449 (11th Cir. 1992). After a jury again convicted Crenshaw and the court reimposed the sentence outlined above, we affirmed Crenshaw's conviction in an unpublished opinion. See United States v. Hines, 4 F.3d 1000 (11th Cir. Sept. 16, 1993) (unpub.).

2

all inquires by, and follow the instructions of, his probation officer; and (3) participate in a program of testing and treatment for drug and alcohol abuse. In July 2002, Crenshaw was released from incarceration and began serving his term of supervised release.

In July 2003, the government filed a "petition for warrant or summons for offender under supervision," based on the following alleged violations: (1) being arrested on July 8, 2003, in Cedar Hill, Texas, on a state charge of assault with bodily injury to his wife, Ann Crenshaw; (2) repeatedly calling Ann Crenshaw after his probation officer instructed him not to have further contact with her; and (3) failing to participate in a court-ordered drug-treatment program. During Crenshaw's preliminary revocation hearing, the magistrate judge informed him (1) of the nature of the alleged violations; (2) that he had a right to counsel; and (3) that the court had appointed for him Charles Jones, the attorney who had represented Crenshaw during his trials on the underlying offenses. After Crenshaw stipulated to probable cause and waived his preliminary hearing, the court set the proceeding for a final revocation hearing on the following day.

At the beginning of this final revocation hearing, Crenshaw's counsel informed the court that Crenshaw "wants to no longer have me as his lawyer." After asking Crenshaw's counsel to remain in the courtroom, the court

3

summarized the extent of his counsel's prior representation of Crenshaw and

concluded:

> So Mr. Jones is probably more familiar with this case than anybody
> ever anywhere.  So, if you will remain inside the courtroom in the
> event I have to ask you some question, Mr. Jones, I would appreciate
> it.  Mr. Crenshaw has rejected his service here this morning.

The government then presented testimony by Ann Crenshaw and another

witness on facts supporting the assault charge.  After being given the opportunity

to question each of these witnesses, Crenshaw declined.  Richard Bruner, a police

officer with the Cedar Hill Police Department who responded to Ann Crenshaw's

assault report, also testified as to how Ann Crenshaw appeared when he arrived at

the scene of the crime.[3]  Finally, the government introduced the testimony of

Steven Gray, Crenshaw's probation officer, which included that (1) another

probation officer instructed Crenshaw not to have any contact with Ann Crenshaw

after his arrest on the Texas offense; (2) phone records reflected that Crenshaw

subsequently had called Ann Crenshaw's cell-phone number from his jail cell; and

(3) Crenshaw had missed multiple appointments the court had ordered him to

---

[3]  The government also introduced, without objection, photographs of Ann Crenshaw, which were taken on the day that police responded to her assault report and depicted marks on her face and body.

attend as part of his drug-treatment program. Crenshaw also declined to cross-examine Officer Bruner and Officer Gray.

At the close of the government's evidence, the court stated to Crenshaw that his appointed counsel still was in the courtroom, that this counsel was familiar with the case, and that Crenshaw had the right to testify. Crenshaw responded that he did not wish to testify. When the court asked Crenshaw if he wished to consult with his appointed counsel, the following discussion occurred:

> Crenshaw: I have spoken with him.
> The court: Do you wish to talk to him now?
> Crenshaw: I don't know if he have (sp.) anything different to tell me than he already has.
> The court: Of course, I cannot ask you or him what he told you. So, I will not ask you that.
> Crenshaw: Well, basically it was that—
> The court: No, don't tell me. Just talk to him a minute there. Mr. Jones, would you come here?
> Jones: Sir?
> The court: I wanted him to know if you had anything you wanted to tell him or he wanted to tell you.
> Jones: Well, I talked to him over there. And he said he wanted to change lawyers. And I said I would be happy to do that.
> The court: Right.
> Jones: I still would be happy to change lawyers.
> The court: I there anything else, Mr. Crenshaw, you want to talk to him about?
> Crenshaw: Well, I asked him if he was familiar with this process, because he said I was facing ten years on a violation of probation.
> The court: Yes.

Crenshaw: Ten years, I mean, like, you know, I didn't expect to be facing such for that. So, I really, you know, didn't know if he was really aware.

The court: Now, you had a hearing before the [m]agistrate [j]udge. And you had a magistrate judge out in Texas; did you not?

Crenshaw: Yes sir, I did.

The court: All right. The [c]ourt is going to make certain findings at this time.

After summarizing the evidence that the government had presented during the hearing, the court found that Crenshaw had violated the conditions of his supervised release, as set forth in the petition for revocation. When the court gave Crenshaw the opportunity to allocute, he stated that (1) he had not "kidnaped" Ann Crenshaw, (2) his name was on the lease of the residence at which the assault occurred, and (3) his wife had first initiated contact after Crenshaw was ordered not to have contact with her. The court, without objection, ultimately revoked Crenshaw's supervised release and sentence him to a total term of 60 months' imprisonment, to be followed by 3 years' supervised release.

Crenshaw argues on appeal that the district court denied him his right to appointed counsel because, after he asserted at his preliminary revocation hearing that he wished to be represented by counsel, he did not effectively relinquish that right when his appointed counsel informed the court that Crenshaw no longer wanted his representation. Crenshaw contends that a constitutionally valid waiver

of counsel, instead, requires evidence in the record showing that the defendant's request to represent himself is "clear and unequivocal." Crenshaw also asserts that he did not have the assistance of standby counsel for the majority of the hearing, and that the record reflects that he and his appointed counsel had some type of conflict. Finally, Crenshaw argues that, even if we were to conclude that he effectively waived his right to counsel, the district court committed a per se error by failing to warn him about the dangers or risks of proceeding pro se.

We ordinarily review a district court's conclusion that a defendant's waiver of his right to counsel is valid—that it is knowing, voluntary, and intelligent—de novo. United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002). Under this review, we examine "(1) the defendant's age, health, and education; (2) the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; (4) the defendant's understanding of the rules of evidence, procedure and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; (7) any mistreatment or coercion of the defendant; and (8) whether the defendant was attempting to manipulate the trial." Id. at 730-31.

However, when a defendant raises an argument for the first time on appeal, such as in the instant case, our review is only for plain error. United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005). "Under plain error review, which is authorized by Fed.R.Crim.P. 52(b), federal appellate courts have only a limited power to correct errors that were forfeited because they were not timely raised in the district court." Id. at 1270-71 (internal quotations and marks omitted). Thus,

> we may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. . . . Even then, we will exercise our discretion to rectify the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Id. at 1271 (internal quotations and marks omitted).

The Supreme Court has determined that revocation proceedings are not a part of a criminal prosecution. Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (parole revocation); Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759-60, 36 L.Ed.2d 656 (1973) (probation revocation). However, a defendant facing possible revocation of supervised release, "although not entitled to all of the procedural protections afforded a defendant in a criminal proceeding, is entitled to certain [due process] protections." United States v. Copeland, 20 F.3d 412, 414 (11th Cir. 1994) (citing

Morrissey, 408 U.S. at 480-82, 92 S.Ct. at 2599-2601; Gagnon, 411 U.S. at 782-91, 93 S.Ct. at 1760-64).

In Gagnon, the Supreme Court specifically addressed whether an indigent defendant has a due process right to be represented by appointed counsel at a revocation hearing. Gagnon, 411 U.S. at 783, 93 S.Ct. at 1760. The Court ultimately declined to adopt an absolute rule in Gagnon, and, instead, concluded:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

Id. at 790, 93 S.Ct. at 1763. Moreover, the Gagnon Court explained that, although "it [was] neither possible nor prudent to formulate a precise and detailed set of requirements," counsel presumptively should be appointed only in cases where the defendant, after being told of his right to counsel, (1) requests counsel, and (2) either (a) claims that he did not commit the alleged violation; or (b) argues that

9

substantial reasons, which are complex or otherwise difficult to present, make revocation inappropriate. Id. at 790, 93 S.Ct. at 1764.[4]

Here, the magistrate judge initially appointed Jones as Crenshaw's counsel, apparently before Crenshaw requested such an appointment. However, after Crenshaw's counsel informed the court at Crenshaw's final revocation hearing that Crenshaw did not wish to be represented by his appointed counsel, the court did not appoint him other counsel. Applying the Supreme Court's analysis in Gagnon, Crenshaw did not concede at his final revocation hearing that he committed the alleged violations. On the other hand, he neither requested alternative counsel, nor argued that he (1) did not commit the alleged violations, or (2) was justified in acting based on substantial reasons.

Nevertheless, even assuming that error occurred, Crenshaw, who carries the burden of proof under the third prong of plain-error standard of review, has failed to show how this error affected his substantial rights. In making such a showing, the defendant normally must prove that the error "must have affected the outcome of the district court proceedings." United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (internal quotations and marks omitted), petition for cert.

---

[4] Although Gagnon involved the revocation of probation, we have concluded that the analysis of the revocation proceedings relating to probation and supervised release are "essentially the same." See United States v. Almand, 992 F.2d 316, 318 n.5 (11th Cir. 1993).

filed, No. 04-1148 (U.S. Feb. 23, 2005). "The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome." Id. (internal quotations and marks omitted). "[W]here the effect of an error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." Id. at 1301.

Here, the magistrate advised Crenshaw of the nature of his violations and his right to be represented by appointed counsel at his preliminary revocation hearing. Crenshaw conceded during his final revocation hearing that he had discussed his case with his appointed counsel before the hearing had commenced. Moreover, during this final revocation hearing, the court gave Crenshaw the opportunity to cross-examine the government's witnesses, present evidence, and to confer with his appointed counsel, who the court had ordered to remain in the courtroom. Because Crenshaw has failed to explain, and the record does not reflect, how he was prejudiced by the court's failure to appoint him alternative counsel, he has failed to meet his burden of showing prejudice, and no plain error occurred. See Peters, 403 F.3d at 1270 -71; Rodriguez, 398 F.3d at 1299.

Furthermore, we have concluded that "even plain[-]error review is unavailable in cases where a criminal defendant 'invites' the constitutional error of which he complains." United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003). "A defendant who invites error may not cite that error as a basis for reversal on appeal." United States v. Dicks, 338 F.3d 1256, 1258 (11th Cir. 2003), cert. denied, 430 U.S. 1200 (2004). As discussed above, after Crenshaw's appointed counsel informed the court that Crenshaw was declining his representation, neither he nor Crenshaw, himself, moved the court to appoint alternative counsel, or objected to Crenshaw proceeding pro se. Thus, if any error occurred, it was invited and is not reviewable on appeal.

Finally, to the extent Crenshaw is arguing that the court erred in not warning him of the dangers of proceeding without counsel, the Supreme Court determined in Faretta that the Sixth Amendment affords criminal defendants the right to defend themselves if they so desire. Id., 422 U.S. at 816-21, 95 S.Ct. at 2532-34. However, the Faretta Court also recognized that "in most criminal prosecutions defendants [can] better defend with counsel's guidance than by their own unskilled efforts." Id. at 834, 95 S.Ct. at 2540. Thus, the Court concluded that, before a defendant is allowed to waive the assistance of counsel, he "should be made aware of the dangers and disadvantages of self-representation, so that the

12

record will establish that he knows what he is doing and his choice is made with eyes open." Id. at 835, 95 S.Ct. at 2541 (internal quotations omitted).[5]

Moreover, we have discussed that the "ideal method" of assuring that a defendant understands the consequences of a waiver is for the trial court to conduct a pretrial hearing, at which the court "should inform the defendant of the nature of the charges against him, the possible punishments, basic trial procedure and the hazards of representing himself." Kimball, 291 F.3d at 730 (citing United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995)). "The purpose of this hearing is to allow judges to determine whether the defendant understands the risks of self-representation." Kimball, 291 F.3d at 730.

However, an error must be "plain" for this Court to conclude that plain error occurred. See Peters, 403 F.3d at 1270. "Plain error is, by its terms, error which is so obvious and substantial that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it." United States v.

---

[5] The Supreme Court recently clarified in Iowa v. Tovar, 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004)—an appeal in which the defendant waived his right to counsel prior to entering a plea of guilty—that, although a defendant's waiver of his right to counsel must be "made with open eyes," the Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." See id., 541 U.S. at 88, 124 S.Ct. at 1387.

13

Smith, 402 F.3d 1303, 1322 (11th Cir.) (quotation omitted), petition for cert. filed, No. 04-1390 (U.S. April 15, 2005). " [W]here neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." Id. (quotation omitted).

Neither the Supreme Court nor this Court has concluded that the procedure outlined in Faretta should be applied to proceedings involving the revocation of supervised release. Indeed, as discussed above, a person facing the revocation of supervised release is not entitled to all of the procedural protections afforded a defendant in a criminal proceeding. See Copeland, 20 F.3d at 414. Thus, the court did not plainly err in failing to conduct a Faretta hearing before proceeding with Crenshaw's revocation hearing.

Accordingly, we conclude that the district court did not plainly err in either (1) granting Crenshaw's oral motion to proceed without his appointed counsel, or (2) allowing Crenshaw to proceed pro se without first advising him pursuant to Faretta. We, therefore, affirm the district court's revocation of Crenshaw's supervised release.

**AFFIRMED.**

14