[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13421
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cr-00384-CDL-GMB-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL DAUDRI TURNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 5, 2019)

Before MARCUS, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Michael Daudri Turner appeals his sentence of 37 months' imprisonment, 3 years' supervised release, and $289,877.29 in fines and restitution, imposed after he pled guilty to conspiracy to commit bank fraud. He argues that the district court erred in allowing him to proceed pro se at sentencing because he did not knowingly waive his right to counsel. More specifically, he argues that the district court failed to conduct a colloquy establishing his knowing and intelligent waiver, and failed to adequately warn him of the dangers of self-representation. After review of the parties' arguments, we affirm.

**I**

Mr. Turner was charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. Mr. Turner pled guilty, via a negotiated plea agreement, to the latter count. At his change of plea hearing, the district court explained to Mr. Turner the potential consequences of pleading guilty and explained his general rights (including the right to a jury trial, to assistance of counsel, to confront witnesses, to refuse to testify, and to compel witnesses to testify in his defense). Mr. Turner acknowledged that he understood the consequences and his rights and that he had discussed the sentencing guidelines with his attorney. The

2

court found that Mr. Turner's plea was knowing and voluntary, accepted the plea, and judged him guilty.[1]

Before sentencing, Mr. Turner sent a letter to the district court stating, "I am terminating my court appointed Attorney effective immediately. I will no longer be needing [my attorney's] service . . . because I am competent to handle my own affairs." That same day, Mr. Turner's attorney, Thomas Goggans, filed a motion to withdraw because Mr. Turner had sent him a letter terminating his services and expressing a desire to represent himself.

At Mr. Turner's sentencing hearing, Mr. Goggans was present. Mr. Turner repeatedly refused to confirm his identity for the district court. The court explained to Mr. Turner that refusing to identify himself would likely result in removal of the acceptance of responsibility adjustment to his sentence. Mr. Turner still refused to identify himself, but Mr. Goggans confirmed Mr. Turner's identity for the court.

Turning to Mr. Goggan's motion to withdraw as Mr. Turner's counsel, the district court explained to Mr. Turner:

> [L]et me make sure that you understand the *perils* of proceeding without a lawyer. You certainly have a right to represent yourself, but there are *pitfalls* when you do so. This process has certain rules and procedures of law that lawyers such as [your lawyer] are trained to understand and to be able to apply in your best interests. And if you do

---

[1] According to the presentence investigation report (PSI), Mr. Turner established a fictitious business so that he, and others, could apply for loans at various banks to buy cars that they already owned or had no intent to buy. The PSI noted that Mr. Turner was 31 years old and had obtained his high school and associate degrees. He had been previously convicted of third-degree domestic violence (a misdemeanor).

not have a lawyer that can assist you in that regard, then it is the Court's view that *you are at a disadvantage*. And you certainly have the right to be represented by a lawyer. And if you can't afford one, one will be appointed to represent you, as [your lawyer] has been so appointed. You do not, however, under the constitution or any other principle of law have the right to choose your appointed lawyer. The Court does the appointing, and the defendant who receives an appointed lawyer must either accept that lawyer or proceed without a lawyer.

So that's your situation today. You have the right to proceed, representing yourself in this sentencing hearing, or you certainly have the right, which *I would encourage you to exercise*, to be represented by [your lawyer]. But you don't have the right to require the Court to appoint somebody else to represent you.

Now, I've explained to you the *disadvantages of proceeding on your own*. Those include not only issues related to today's hearing, but may relate to other issues that have occurred in this case and that may occur after today's hearing. It would be an *advantage* for you to have a lawyer that could guide you in that process and give you the benefit of their experience and their expertise.

Doc. 355 at 8–11 (emphases added).

During the ensuing exchange, the district court warned Mr. Turner that "having a lawyer explain the process and the laws and the rules under certain circumstances can be advantageous." Mr. Turner responded, "I choose to remain silent, Your Honor." Nevertheless, Mr. Turner repeatedly stated that he was "very competent to represent" himself and answered affirmatively when the court asked him whether he understood that he did not have to represent himself.

The district court then asked Mr. Turner whether he understood the purpose for the hearing. Mr. Turner said that he wanted to settle his debt with the court and

that he did not want to contract with the courts. The court interpreted Mr. Turner's statements about "contract[ing]" to mean that he wished to withdraw his guilty plea. Mr. Turner confirmed that interpretation and indicated that he wished to represent himself during the plea withdrawal proceedings. The court once again cautioned Mr. Turner regarding the wisdom of having an attorney to represent him, and Mr. Turner responded that he understood, but wanted to represent himself anyway.

During the discussion of his plea withdrawal, Mr. Turner stated that he wanted to "handle this on a private side" and cited "HJR 192," which he believed would allow him to discharge his debt. The government recognized this as a "sovereign citizen type argument." The district court found that Mr. Turner's argument was not a legitimate legal reason for withdrawing his plea and that he had failed to show that his plea was involuntary or unknowing. The court denied Mr. Turner's request to withdraw his plea.

The district court asked Mr. Turner whether he had reviewed and understood the PSI. Mr. Turner said that he had read the PSI but did not understand it. The court then asked Mr. Goggans if he had reviewed the PSI with Mr. Turner, and he responded that they had reviewed the draft report in detail, which was substantively the same as the final PSI. He also said that he provided Mr. Turner with the final report and that Mr. Turner had confirmed receipt. Mr. Goggans said that he believed Mr. Turner understood the report and its guideline calculations.

The district court granted Mr. Turner's motion to represent himself based on a finding that he understood the consequences of doing so and that he made the choice voluntarily. The court also appointed Mr. Goggans as standby counsel to "clarify for [the court] anything that needed to be clarified."

The district court sentenced Mr. Turner to 37-months' imprisonment, three years of supervised release, and ordered him to pay $289,877.29 in fines and restitution. Before imposing the sentence, the court told Mr. Turner the following:

> If you continue to accept responsibility for that conduct [you pled guilty to], the bottom line is that your sentence is going to be less. If you do not accept responsibility for that conduct and come in here and indicate that you're not responsible for the conduct that you pled guilty to, then your sentence is likely to be higher. You're going to spend more time in prison.

The court asked Mr. Turner if he accepted responsibility, to which he responded, "I choose to remain silent."

Mr. Turner now appeals, represented by appointed counsel. He argues that the district court's colloquy was insufficient to establish that his waiver of counsel was voluntary and knowing, because the court merely provided general admonitions against self-representation but did not warn him of the specific pitfalls that he might face at sentencing. This error was compounded, Mr. Turner argues, by his lack of experience with the federal criminal system and its procedural complexities.

## II

A district court's determination as to the validity of a defendant's waiver of his Sixth Amendment right to counsel is generally a mixed question of law and fact that we review de novo. *See United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2006). Where a defendant fails to object to the validity of his waiver of counsel before the district court, plain error review may be appropriate. *See United States v. Stanley*, 739 F.3d 633, 644 (11th Cir. 2014). We have not yet decided the standard of review in such a circumstance—our mine run of cases apply a *de novo* review without discussing whether the defendant objected at trial. *See id*. We apply a de novo standard here because Mr. Turner cannot prevail under that standard.

The constitutional right to self-representation is closely tied to the right to representation by counsel. *See United States v. Garey*, 540 F.3d 1253, 1262–63 (11th Cir. 2008) (en banc). A criminal defendant may waive the right to counsel if it is done knowingly and intelligently. *See Faretta v. California*, 422 U.S. 806, 835 (1975). For a waiver of the Sixth Amendment right to be valid, the defendant "must clearly and unequivocally assert [his] right of self-representation." *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986). The government bears the burden of proving the waiver's validity. *See Green v. United States*, 880 F.2d 1299, 1303 n.6 (11th Cir. 1989) (citing *Brewer v. Williams*, 430 U.S. 387, 404 (1977)).

7

Upon a defendant's clear request for self-representation, a district court should hold a *Faretta* hearing to ensure the defendant is aware of the nature of the charges against him, possible punishments, basic trial procedure, and the hazards of self-representation. *See Kimball*, 291 F.3d at 730. Factors the court should address to determine whether a waiver is knowing and intelligent include: (1) the defendant's age, health, and education; (2) the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of the rules of evidence, procedure, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; (7) any mistreatment or coercion; and (8) whether the defendant was attempting to manipulate the trial. *See id.* at 730–31 (citing *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065–67 (11th Cir. 1986)).

We have recognized, however, that a full *Faretta* colloquy may not be feasible when a defendant is uncooperative. *See Garey*, 540 F.3d at 1267. If a defendant refuses to engage in dialogue with the district court, a *Faretta*-like monologue may take the colloquy's place. *See id.* at 1268. It must show that the defendant: "(1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled." *Id.* at 1267–68. The Supreme Court has not "prescribed any formula or

8

script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar,* 541 U.S. 77, 88 (2004). The discussion or monologue must, however, rise above mere admonitions. *See United States v. Cash*, 47 F.3d 1083, 1089–90 (11th Cir. 1995).

### III

For a number of reasons, the district court did not err in permitting Mr. Turner to waive counsel and represent himself at the sentencing hearing.

First, the district court's *Faretta*-like monologue was appropriate under the circumstances. Mr. Turner was uncooperative throughout the hearing—repeatedly refusing to identify himself and electing to remain silent in response to several important questions from the court. In light of this obstructive behavior, a *Faretta*-like monologue was appropriate. *See Garey*, 540 F.3d at 1263–70.

Second, Mr. Turner clearly and unequivocally expressed his desire to represent himself by notifying both his lawyer and the district court in writing, and repeatedly stating during the sentencing hearing that he wanted to represent himself. Mr. Turner told the court several times that he was "competent to handle his own affairs" and answered affirmatively when the court asked him to confirm. These acts and statements clearly indicate Mr. Turner's desire to invoke his right of self-representation.

Third, the district court adequately informed Mr. Turner of the risks and potential consequences of proceeding without counsel. The court made clear that he had the right to representation, that there were "perils" and "pitfalls" to proceeding without a lawyer, and that a lawyer could help apply rules and procedures in Mr. Turner's best interest. The court told Mr. Turner that he would be at a disadvantage if he were to proceed without counsel, encouraged him to proceed with the help of his lawyer, and stated that it would be advantageous to have a lawyer. Further, in regard to proceeding without a lawyer on the issue of withdrawal of the guilty plea, the court again stated that counsel could assist him in determining if he had a basis for withdrawing the plea. Throughout delivering those warnings, the court asked Mr. Turner whether he understood the advantages of having a lawyer. Mr. Turner consistently responded that he chose to remain silent. This is similar to the inquiry and discussion we upheld in *United States v. Evans*, 478 F. 3d 1332, 1337–40 (11th Cir. 2002), which also involved a defendant's request to represent himself at sentencing.

Finally, to the extent the *Fitzpatrick* factors inform whether Mr. Turner's waiver was knowing, they weigh in favor of such a waiver. Because the district court did not conduct a full *Faretta* colloquy, it did not specifically inquire into the factors. Nevertheless, the PSI and the record contain facts sufficient to support an analysis.

The first, second, and third *Fitzpatrick* factors favor waiver. Mr. Turner was 31 years old, and held both high school and associate degrees. There is no indication that he was in poor mental or physical health. Mr. Turner was represented by counsel up until the sentencing hearing. And Mr. Turner had been represented by counsel for a previous domestic violence misdemeanor conviction. Although that case was not in federal court, it indicates that Mr. Turner had at least some familiarity with the criminal justice process. During the change of plea proceeding, the district court clearly explained to Mr. Turner the charges to which he was pleading guilty and the penalties that he might face at sentencing. Additionally, Mr. Turner's attorney said at the sentencing hearing that he had discussed the PSI and guideline calculations with Mr. Turner and that Mr. Turner appeared to understand them. The court explained to Mr. Turner that refusing to accept responsibility would result in a higher sentence and more time in prison.

The sixth *Fitzpatrick* factor also weighs in favor of waiver. Mr. Goggans served as standby counsel and was present for the entire sentencing proceeding. Mr. Turner argues that standby counsel was not for his benefit because the district court stated that Mr. Goggans would "clarify things for [the court] anything that needs to be clarified." Nevertheless, there is no indication that Mr. Turner was prevented from consulting Mr. Goggans if he wanted to. Moreover, even though Mr. Goggans was terminated as counsel, the court considered a motion for variance that he had

11

previously filed and also requested him to file the notice of appeal on Mr. Turner's behalf.

The remaining factors do little to counsel against a finding of a knowing and intelligent waiver of counsel. The fourth factor weighs against waiver, because there is no indication that Mr. Turner had more than a very basic understanding of the rules of evidence, procedure, or courtroom decorum. The fifth factor is irrelevant, as it refers to waiver prior to a criminal trial. The seventh and eighth factors are neutral because there is no indication of mistreatment or coercion and, while Mr. Turner's actions could be construed as an attempt to manipulate the proceeding, there is no indication that he was acting with a conscious effort to do so.

Mr. Turner argues that this case is similar to *United States v. Cash*, 47 F.3d 1083 (11th Cir. 1995). In *Cash*, we evaluated the *Fitzpatrick* factors and found that the district court's colloquy was insufficient because it provided "mere general admonitions" to the defendant about the risks of proceeding to trial without counsel. We suggested that the district court should have discussed "some of the specific pitfalls" the defendant was likely to encounter in order to ensure that he understood the difficulties of self-representation. *Id.* at 1089–90.

There are indeed some similarities between Mr. Turner and the defendant in *Cash*. And some of the *Fitzpatrick* factors that we found tilted in favor of a knowing waiver in *Cash* arguably tilt the other way for Mr. Turner.[2]

The critical difference is that, in *Cash*, the defendant had been recently diagnosed with a narcissistic personality disorder that "cause[d] him to overestimate and overstate his abilities." *Id.* at 1090. We determined that this fact tipped the "close" balance of the factors towards finding that waiver of counsel was not knowing, voluntary, and intelligent because it "render[ed] questionable" Cash's claims about his level of understanding of the charges and potential penalties. *See id.* Moreover, Cash was permitted to proceed pro se on the very day of his criminal trial, which is a far more complex proceeding than Mr. Turner's sentencing hearing.

## IV

Overall, the record demonstrates that Mr. Turner's waiver of counsel was knowing and intelligent, given his clear requests to represent himself on multiple

---

[2] In reviewing the *Fitzpatrick* factors in *Cash*, we noted the following: Cash held a degree in business administration, claimed to possess self-taught legal knowledge, and was a self-employed legal consultant for 7 years. Prior to trial, he had contact with an appointed lawyer and two retained lawyers, although that contact was limited because he underwent psychological evaluation and treatment for much of the period preceding trial. The evaluation report stated that Cash understood his case, the charges against him, and the sentence he might face. It also stated that he "demonstrated knowledge of courtroom procedure, the roles of the participants, the types of pleas he could make and appropriate courtroom behavior." *Id.* at 1089. Cash had been involved in several civil lawsuits, but lacked experience with criminal trials. His counsel remained on standby "to consult with [him] or to take over his defense if he change[d] or need[ed] to talk to [him]," *id.*, but did not provide advice or aid at trial. Finally, Cash made no allegation of mistreatment or coercion and there was no evidence he waived counsel to manipulate the proceedings.

occasions.  A full *Faretta* colloquy was not required under the circumstances, and the district court explained some of the risks of self-representation and the advantages of continuing with appointed counsel.  *See Evans*, 478 F.3d at 1337–40.  To the extent the factors governing a *Faretta* colloquy apply here, they weigh in favor of finding that Mr. Turner's waiver was valid.  Accordingly, we affirm.

**AFFIRMED.**